Defendant-appellant, Kevin W. Walls, appeals his conviction for the aggravated murder of Ann Zwiefelhoefer in the Butler County Court of Common Pleas. We affirm the jury's verdict.
At approximately 2:15 p.m. on March 8, 1985, Zwiefelhoefer's niece discovered Zwiefelhoefer's corpse laying on the living room floor of Zwiefelhoefer's residence at 1433 Maple Avenue, Hamilton, Butler County, Ohio. The front door of the residence appeared to have been pried open. Cupboards had been opened and their contents removed, and Zwiefelhoefer's otherwise neat home was disheveled. Zwiefelhoefer had been stabbed nine times, causing her to bleed to death. The coroner estimated that Zwiefelhoefer had been dead for approximately fifteen to twenty-four hours.
Police collected a large amount of evidence from the scene, including numerous photographs and twelve latent fingerprint lifts from the front door of the residence and from objects inside the residence that appeared to have been moved. Although police initially suspected a juvenile named Tony Gray who lived in Zwiefelhoefer's neighborhood, Gray was never charged or arrested for the murder. Appellant, who was fifteen years old on the date of Zwiefelhoefer's murder, also lived in Zwiefelhoefer's neighborhood approximately six hundred yards from her residence. Appellant had never previously been a suspect in the crime.
Despite exhaustive police investigation, Zwiefelhoefer's murder remained unsolved for approximately fourteen years. Then, in June 1998, Ohio's new Automated Fingerprint Identification System ("AFIS") went on line. Appellant's known fingerprints, along with the known fingerprints of 1.2 million other individuals, had been loaded into AFIS by October 1998. On October 15, 1998, Officer Sheryl Mahan, a latent fingerprint examiner employed by Ohio's Bureau of Criminal Investigation ("BCI"), began inputting latent fingerprints taken from unsolved crime scenes into AFIS in order to compare them to the known fingerprints.
Mahan searched AFIS, requesting the names and known fingerprints of ten people whose fingerprints most closely matched the latent fingerprints taken from the scene of Zwiefelhoefer's murder. Appellant's name surfaced second on Mahan's list. Mahan then manually compared appellant's known fingerprints with the latent fingerprints. Mahan found that five of the latent fingerprints taken from Zwiefelhoefer's residence matched appellant's fingerprints. Another FBI fingerprint examiner matched appellant's fingerprints with latent fingerprint lifts police had taken from the screen door and the inside door handle of Zwiefelhoefer's home, as well as from several objects inside the house.
On November 13, 1998, more than fourteen years after the crime had been committed, the state indicted appellant for Zwiefelhoefer's murder. He was charged with aggravated murder while committing a felony and aggravated burglary. Appellant filed a motion to dismiss the aggravated burglary charge, citing the crime's six-year statute of limitations. The state agreed to dismiss that charge. The trial court dismissed the aggravated burglary charge and the specification that appellant had committed a felony while committing aggravated murder.
Appellant then filed two additional motions to dismiss. Appellant first asked the trial court to dismiss the aggravated murder charge. He claimed that the court of common pleas had no subject-matter jurisdiction since appellant had committed the crime while still a juvenile. Accordingly, appellant claimed that he remained a child for purposes of jurisdiction, and therefore the trial court had no jurisdiction over him without following the appropriate procedures to bind him over to adult court. The trial court denied this motion to dismiss.
In his second motion to dismiss, appellant claimed that the fourteen-year pre-indictment delay warranted dismissal of the murder charge. Appellant claimed that the delay had resulted in actual prejudice to his ability to defend himself. The trial court found no actual prejudice resulting from the pre-indictment delay and that the delay was reasonable, and denied appellant's motion.
Appellant was tried before a jury. The jury found him guilty of aggravated murder. The trial court entered judgment on the jury verdict and sentenced him to serve life imprisonment with the possibility of parole after twenty years. Appellant's life sentence was to be served consecutively with an unrelated robbery sentence that he was already serving. Appellant now raises three assignments of error on appeal.
Assignment of Error No. 1:
 THE TRIAL COURT LACKED PROPER SUBJECT MATTER JURISDICTION, MAKING APPELLANT'S CONVICTION VOID AB INITIO.
Appellant first claims that, since he was fifteen years old at the time of Zwiefelhoefer's murder, the law required him to be treated as a child so that the charge initially should have been brought in juvenile court. Since the indictment did not originate in juvenile court and the court did not follow proper juvenile court bind-over procedures, appellant claims that the general division of the Butler County Court of Common Pleas never acquired proper subject-matter jurisdiction over him. The state responds that it is the juvenile court that did not have jurisdiction over appellant by the time he was charged with the crime at age twenty-nine. Accordingly, the state claims, the general division of the court of common pleas had original and exclusive jurisdiction over appellant.
Absent a "patent and unambiguous" lack of jurisdiction, a court having general subject-matter jurisdiction can determine its own jurisdiction. See Page v. Riley (1999), 85 Ohio St.3d 621, 623; see, also, State exrel. Wehrung v. Dinkelacker (Oct. 13, 2000), 2000 WL 1514859, at *1, Hamilton App. No. C-000449, unreported. Here, the trial court denied appellant's motion to dismiss for lack of jurisdiction, implicitly finding that the general division, instead of the juvenile division, had proper jurisdiction over appellant. Since the trial court's determination that it had subject-matter jurisdiction involves a question of law, however, we review the trial court's determination de novo. McClure v. McClure
(1997), 119 Ohio App.3d 76, 79.
Pursuant to Article IV, Section 4(B) of the Ohio Constitution, the jurisdiction of the court of common pleas is determined by statute. Jurisdiction over all crimes and offenses is vested in the general division of the court of common pleas, unless such jurisdiction is specifically and exclusively vested in other divisions of the court of common pleas or in the lower courts. State ex rel. McMinn v. Whitfield
(1986), 27 Ohio St.3d 4, 5. Since juvenile courts were unknown at common law, they have no inherent, historical, or traditional power upon which to rely. State ex rel. Lunsford v. Buck (1993), 88 Ohio App.3d 425, 429. Therefore, the juvenile court possesses only the jurisdiction that the general assembly has expressly conferred upon it. Id.; In re Gibson,61 Ohio St.3d 168, 172.
R.C. 2151.23 sets forth the circumstances under which the juvenile division of the court of common pleas has original jurisdiction. Under the Ohio Revised Code, the juvenile division has exclusive original jurisdiction concerning any "child" who, on or about the date specified in the complaint, is alleged to be a juvenile traffic offender or who is arrested under any charge, complaint, affidavit, or indictment for a felony or a misdemeanor. R.C. 2151.23(A)(1); R.C. 2151.25.
Appellant insists that, since he committed the crime when he was fifteen years old, he was subject to the exclusive original jurisdiction of the juvenile court. Although he was not arrested for Zwiefelhoefer's murder until 1998, when he was twenty-nine years old, appellant claims he was considered a "child" at the time the crime was committed, so the state erroneously brought the charges in the general division of the court of common pleas. Appellant cites the version of R.C. 2151.011 that was in effect at the time of Zwiefelhoefer's murder on March 7, 1985. At that time, the statute defined a "child" as:
 [A] person who is under the age of eighteen years, except that any person who violates a federal or state law or municipal ordinance prior to attaining eighteen years of age shall be deemed a "child" irrespective of his age at the time the complaint is filed or the hearing on the complaint is held and except that any person whose case is transferred for criminal prosecution pursuant to section 2151.26 of the Revised Code and is subsequently convicted in that case shall after the transfer be deemed not to be a child in any case in which he is alleged to have committed an act that if committed by an adult would constitute murder or aggravated murder, an aggravated felony of the first or second degree, or a felony of the first or second degree.
R.C. 2151.011(B)(1).
 R.C. 2151.011(B)(1) was amended in 1997 to specifically provide for a situation such as this one, in which a person under the age of eighteen commits a crime for which he is not arrested until he is over the age of twenty-one. Under the version of R.C. 2151.011 now in effect, any person who, while under eighteen years of age, commits an act that would be a felony if committed by an adult and who is not taken into custody or apprehended for that act until after the person attains twenty-one years of age is not a "child" in relation to that act. R.C. 2151.011(B)(6)(c).
This section indisputably defines appellant as an adult for purposes of his trial for Zwiefelhoefer's murder. Under the current version of R.C.2151.011(B)(6)(c), the general division of the court of common pleas has exclusive original jurisdiction over appellant's crime. However, appellant claims that the 1997 amendment of this section has been improperly applied retroactively to impair his substantive rights.
R.C. 1.48 codifies the long-standing rule that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective."Board of Commrs. of Warren County v. City of Lebanon (1989),43 Ohio St.3d 188, 189. The issue of whether a statute may constitutionally be applied retrospectively does not arise unless there has been a prior determination that the general assembly specified that the statute so apply. Id., citing Van Fossen v. Babcock Wilcox Co.
(1988), 36 Ohio St.3d 100, paragraph one of the syllabus.
In order to determine whether R.C. 2151.011(B)(6)(c) is retroactive, the court determines whether the statute relies on antecedent facts for its operation. State ex rel. Plavcan v. School Emp. Retirement Sys. ofOhio (1994), 71 Ohio St.3d 240, 243. Statutes that reference past events to establish current status have been held not to be retroactive. Id., citing State ex rel. Bouse v. Cickelli (1956), 165 Ohio St. 191.
The current version of R.C. 2151.011(B)(6)(c) determines the present jurisdiction of the court of common pleas general division by looking to the charged individual's age at the time of the complaint or indictment. This section makes irrelevant any consideration of the accused's age at the time he committed the crime. Thus, by its very terms, the statute relies on no factor that would extend back in time before the date of the its 1997 amendment. We hold that the statute was intended to operate prospectively to confer jurisdiction on the general division of the court of common pleas regardless of whether the juvenile was under the age of eighteen at the time he or she committed the crime.
Appellant also contends that the statute, applied retroactively, affects his substantive rights. Where a statute has not been expressly made retroactive by the legislature, a reviewing court need not, and indeed may not, engage in constitutional analysis to determine whether the enactment is "substantive" or "procedural" in nature. Warren County,43 Ohio St.3d at 189. Since we have determined that the current version of R.C. 2151.011(B)(6)(c) applies prospectively, our analysis ends here and we need not determine whether the statute implicates substantive or procedural rights.
The general division of the court of common pleas had jurisdiction to try appellant for Zwiefelhoefer's murder. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT REFUSED TO DISMISS THE INDICTMENT AS A RESULT OF THE STATE'S PRE-INDICTMENT DELAY.
Appellant next claims that he was denied due process because the state waited fourteen years to charge him with the aggravated murder. He was actually prejudiced by the state's unjustified delay, appellant claims, because evidence crucial to his defense was lost or destroyed. The state responds that appellant has not shown actual prejudice. The state also claims that the delay was wholly reasonable because no evidence implicated appellant in Zwiefelhoefer's murder until Ohio's acquisition of new AFIS technology.
The state's delay in bringing criminal charges may violate a defendant's due process rights if the delay causes actual prejudice to the defense and the state does not justify the delay. State v. Luck
(1984), 15 Ohio St.3d 150, 154. In order to win dismissal for pre-indictment delay, a defendant is burdened with establishing actual prejudice resulting from the delay, and the government is charged with the burden of producing evidence of a justifiable reason for the delay.United States v. Lovasco (1977), 431 U.S. 783, 97 S.Ct. 2044; Luck,15 Ohio St.3d at 157-58.
Accordingly, where a defendant moves to dismiss an indictment, he or she is first required to produce evidence demonstrating that the delay has caused actual prejudice to his defense. Id. Once the defendant has presented evidence establishing substantial prejudice resulting from pre-indictment delay, the state bears the burden of producing evidence of a justifiable reason for the delay. State v. Whiting (1998),84 Ohio St.3d 215, 217, citing Luck, 15 Ohio St.3d 150. The prejudice suffered by the defendant must then be viewed in light of the state's reason for the delay. Whiting, 84 Ohio St.3d at 217.
Appellant was required to show that the fourteen-year delay between Zwiefelhoefer's murder and his arrest resulted in actual prejudice to his defense. Proof of actual prejudice must be specific, particularized and non-speculative. State v. Heath (Feb. 3, 1997), Warren App. No. CA96-04-035, unreported, at 5, motion to file delayed appeal denied,79 Ohio St.3d 1420. In proving prejudice, a defendant must show the exculpatory value of the alleged missing evidence. United States v.Doerr (C.A.7, 1989), 886 F.2d 944, 964. Actual prejudice will not be found where there is a lack of specific evidence. See Heath, Warren App. No. CA96-04-035, unreported, at 6.
Further, any claim of prejudice, such as lost evidence or faded memories, must be balanced against the other evidence in the case in order to determine whether the defendant will suffer actual prejudice at trial. Luck, 15 Ohio St.3d at 154, citing United States v. Marion
(1971), 404 U.S. 307, 326, 92 S.Ct. 455, 466, and United States v.McDonald (1982), 456 U.S. 1, 102 S.Ct. 1497.
In the instant case, appellant points to missing evidence and deceased witnesses as proof that his defense at trial was substantially prejudiced. Appellant first claims that the death of Tom Marsh, the coroner's investigator who twice took the temperature of Zwiefelhoefer's body on the day it was found, resulted in his inability to question Marsh to establish an alternate time of death. Such an alternate time of death, he claims, would have placed him in school when the murder was committed, shoring up his alibi.
However, Marsh's report about the body's temperature was introduced into evidence and used by the coroner in his testimony. Moreover, the record shows that even without Marsh, appellant questioned the coroner extensively regarding the coroner's calculations of Zwiefelhoefer's time of death and the evidence he relied upon for those calculations. Therefore, appellant's claims are speculative and he has failed to show that Marsh's testimony itself would have produced any new or exculpatory evidence.
Appellant also claims that other witnesses and evidence were not available for trial due to the passage of time, such as a photo of Gray, the original suspect in the murder; witnesses who allegedly made statements that they helped Gray dispose of evidence; an alleged spot of blood on a faucet; the death of the lead investigator; tapes from hypnotized sessions with an eyewitness, Ketterer; and absenteeism lists from appellant's school. Appellant speculates about what this additional unavailable evidence might have shown. A more definitive showing is necessary to show prejudice resulting from the passage of time.
As a matter of fact, some of this evidence was shown not to be exculpatory by evidence introduced at trial. For example, one absenteeism list had been admitted that did show appellant was present in school on the day of the murder. Appellant has failed to show that the additional evidence would have been exculpatory.
Moreover, appellant failed to show that any of this evidence is exculpatory given the evidence the state introduced at trial. Latent fingerprints taken from the doors of Zwiefelhoefer's home and objects inside were conclusively identified as his. Appellant's speculative claims of exculpatory evidence pale in light of the unequivocal latent fingerprint identification by two experts. Appellant has failed to show actual prejudice.
If appellant had shown actual prejudice, the state would then have had the burden to produce evidence of a justifiable reason for the delay. SeeWhiting, 84 Ohio St.3d at 217. A delay in the prosecution of a defendant can be found to be unjustifiable when the state delays in order to intentionally gain a tactical advantage over the defendant. Luck,15 Ohio St.3d at 158. In addition, a delay can be found to be unjustifiable where the state, through negligence or error, stops investigating a case but later prosecutes the case based upon the same evidence that was available to it at the time that its active investigation ceased. Id.
Even though appellant has not produced evidence of actual prejudice, we find the state's reason for the fourteen-year delay between the crime and appellant's prosecution eminently justifiable. At the time of the crime, police had only latent fingerprints taken from the scene, with no available means by which to identify appellant. Appellant's name did not even surface during the initial investigation. Despite an exhaustive investigation in which police followed up numerous leads, evidence connecting appellant as the perpetrator of the crime simply did not exist.
It was not until Ohio's acquisition of new computer technology, in the form of AFIS, that police connected appellant to the crime. Once appellant became a suspect in October 1998, police acted quickly to question him and to indict him for Zwiefelhoefer's murder. The fingerprint identification by AFIS had simply not been available fourteen years before. Yet, once AFIS was made available to the state in June 1998, appellant's fingerprints were identified in October 1998, and appellant was indicted for the crime in November 1998. Instead of delay for tactical advantage, we find that the delay was justifiable, premised as it was upon new evidence connecting appellant to the crime.
Appellant has not shown actual prejudice and, even had he done so, we would find the delay in his prosecution justified by the acquisition of new technology. The fourteen-year delay between Zwiefelhoefer's murder and appellant's prosecution did not result in a due process violation. Appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 PREJUDICIAL STATEMENTS MADE BY THE PROSECUTING ATTORNEY DURING CLOSING ARGUMENTS CONSTITUTE REVERSIBLE ERROR.
Appellant presents a list of numerous statements made by the prosecutor in his closing argument and his rebuttal closing argument that appellant contends prejudiced him before the jury. The state counters that appellant's failure to object to the statements resulted in waiver, requiring a plain error analysis. The state also claims the trial court's instruction to the jury cured any possible error. Lastly, the state claims that none of the prosecutor's remarks rose to the level of misconduct.
The test for prosecutorial misconduct is whether the prosecutor's actions were improper and, if so, whether the defendant's rights were substantially affected. State v. White (1998), 82 Ohio St.3d 16, 22, certiorari denied, 525 U.S. 1057, 119 S.Ct. 623; State v. Smith (2000),87 Ohio St.3d 424, 442. The analysis must center on "the fairness of the trial, not the culpability of the prosecutor." Id., citing Smith v.Philips (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947. The prosecutor's conduct cannot be grounds for a new trial unless the conduct deprives the defendant of a fair trial. State v. Keenan (1993), 66 Ohio St.3d 402,405.
Even if a prosecutor's statements during closing arguments are improper, reversal based upon those statements is warranted only if the statements permeate the entire atmosphere of the trial. State v.Tumbleson (1995), 105 Ohio App.3d 693, 699. When reviewing the record, it must be remembered that both the defense and prosecution are given wide latitude in their arguments "as to what the evidence has shown and what reasonable inferences may be drawn therefrom." Id., quoting State v.Lott (1990), 51 Ohio St.3d 160, 165, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591.
When examining the prosecutor's arguments for possible misconduct, we must review the argument as a whole, not in isolated parts, and we must examine the argument in relation to that of opposing counsel. See Statev. Moritz (1980), 63 Ohio St.2d 150, 157-158. If the prosecutor does state an opinion, it must be based upon the evidence presented and not personal beliefs. State v. Watson (1991), 61 Ohio St.3d 1, 10.
Despite defense counsel's failure to object to many of the statements appellant claims amounted to misconduct, we have reviewed every such statement in the context of the arguments as a whole. Initially, we note that the trial court instructed the jury at the outset of closing arguments that the statements of counsel were opportunities for the state and the defendant to argue their respective positions, and that those statements were not to be considered evidence. The jury is presumed to follow the trial court's instructions. State v. Raglin (1998),83 Ohio St.3d 253, 264. We must therefore presume that the jury followed this instruction in its deliberations so that the jury based its conviction upon the evidence alone.
As to appellant's individual allegations of misconduct, we cannot find that any single one of the prosecutor's statements, or the statements construed together, amount to impropriety. The prosecutor's comment inferring the circumstances of a knife wound from its location was objected to by appellant and sustained by the trial court. The prosecutor's additional statements regarding the amount of evidence the state had provided to appellant in discovery and appellant's failure to offer evidence to support his case were both factually accurate and within the latitude accorded a prosecutor. The prosecutor's statement that defense counsel was "kooky" if he thought the evidence did not show a burglary appears nothing more than a response to defense counsel's own statement deriding the prosecution's theory of the crime as "kooky."
We cannot find that any of the prosecutor's statements were improper. Further, given the trial court's curative instruction, we do not find that the prosecutor's closing argument constituted improper conduct depriving appellant of a fair trial. See State v. Maurer (1984),15 Ohio St.3d 239, 266-67, certiorari denied (1985) 472 U.S. 1012,105 S.Ct. 2714. Appellant's third assignment of error is overruled.
 __________________________ VALEN, J.
POWELL, P.J., and WALSH, J., concur.