[Cite as *Rees v. Rees*, 2026-Ohio-1235.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


| | | |
|---|---|---|
| WILLIAM REES, | : | |
| Appellee, | : | CASE NO. CA2025-07-019 |
| vs. | : | OPINION AND JUDGMENT ENTRY 4/6/2026 |
| BROOKE REES, | : | |
| Appellant. | : | |
| | : | |


CIVIL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 22240042


Shannon M. Treynor, for appellee.

Friedman & Mirman, and Scott N. Friedman and Lisa L. Eschleman, for appellant.


# **O P I N I O N**


**SIEBERT, J.**

{¶ 1} Appellant, Brooke Rees ("Mother"), appeals the decision of the Madison County Court of Common Pleas, Juvenile Division, which granted visitation rights to William Rees, the children's paternal grandfather ("Grandfather"). For the reasons

detailed below, we vacate the court's judgment for lack of subject-matter jurisdiction.

**Factual and Procedural Background**

{¶ 2}   Mother and Tommy Rees were married and had three children during their marriage. Tommy unexpectedly died of a heart attack in December 2021, when the children were nine, seven, and three years old.

{¶ 3}   The underlying facts of this case are largely irrelevant to resolution of the present matter. However, the record reflects that Grandfather maintained a relationship with the children both before and after Tommy's passing. In June 2022, Grandfather sent Mother a belligerent and accusatory text message, which caused a significant rift between them. Grandfather contends that, since sending the text message, he has been unable to see the children and believes Mother is preventing contact.[1] There is no dispute, however, that Mother and the children continue to have regular contact with other members of the father's family.

{¶ 4}   On July 1, 2022, Grandfather filed a complaint under R.C. 3109.11 seeking grandparent visitation. The magistrate initially denied the request, concluding, among other things, that Grandfather's behavior toward Mother rendered visitation contrary to the children's best interests. Grandfather filed objections and, following additional testimony, the juvenile court ultimately awarded Grandfather some visitation, i.e., one Saturday per month from 8:00 a.m. to 6:00 p.m.

{¶ 5}   In January 2024, Mother notified the court of her intent to relocate to Texas and served Grandfather with a copy of the change-of-address notice. On March 20, 2024,

---

1. There was also troubling testimony concerning Grandfather. Mother testified that Grandfather had been verbally abusive towards Tommy, and that Tommy "kind of just took it because that's his dad." Grandfather further admitted that he had previously been convicted of a violent offense against a family member, although he later suggested that the conviction had been expunged or "was lowered." His testimony on this point, however, was inconsistent; at another point, he stated that he was "not sure" whether he had pled guilty to a criminal offense and asserted that there was "more to that."

Grandfather filed a motion to modify visitation, requesting that Mother bear the full responsibility for transportation. He also filed a motion for "citation of contempt and the imposition of sanctions," alleging that Mother violated the visitation order.

{¶ 6} The juvenile court held a hearing on the pending motions in August 2024. Mother testified that she relocated to Texas for a fresh start, explaining that she found it difficult to move forward with her life while remaining in Ohio. Grandfather, in turn, testified that he was unable to exercise the ordered visitation due to the financial burden associated with travel.

{¶ 7} In February 2025, the juvenile court found that Mother had not violated the existing visitation order but nonetheless chose to modify it. Although the court determined that Mother had a "sound rationale" for relocating, it also characterized the move as "highly suspicious" because she had not previously indicated that she was considering relocation. The court then modified the visitation schedule to award Grandfather four weeks of companionship time in the summer and one week during the Christmas holiday.[2] The court also ordered Mother to bear all transportation costs.

{¶ 8} Mother now appeals, raising four assignments of error for review.

**Appeal**

*Subject-Matter Jurisdiction*

{¶ 9} Before reaching Mother's assignments of error, we must first determine whether the juvenile court possessed subject-matter jurisdiction. As relevant here, R.C. 3109.11 authorizes the "court of common pleas in the county where the minor resides" to grant reasonable visitation to relatives of a deceased parent, provided a complaint is filed and visitation is in the child's best interest.

---

2. The juvenile court's order is unclear and does not explain why an extended summer separation from Mother is in the children's best interests.

{¶ 10} Subject-matter jurisdiction concerns a court's authority to hear a case and issue a valid judgment. *Cheap Escape Co., Inc. v. Haddox, L.L.C*., 2008-Ohio-6323, ¶ 6. Because a judgment issued without jurisdiction is void, it may be raised at any time. *Digonno v. Hamilton*, 2019-Ohio-2273, ¶ 15 (12th Dist.), citing *Pratts v. Hurley*, 2004-Ohio-1980, ¶ 11.

{¶ 11} Although common pleas courts and probate courts are established by the Ohio Constitution, juvenile courts exist solely by virtue of statute. *In re Z.R*., 2015-Ohio-3306, ¶ 14. *See* Ohio Const., Art. IV, § 4(C) ("Unless otherwise provided by law, there shall be a probate division and such other divisions of the courts of common pleas as may be provided by law"). As statutory courts, juvenile courts have only the jurisdiction expressly granted by the General Assembly. *In re Gibson*, 61 Ohio St.3d 168, 172 (1991).

{¶ 12} R.C. 2151.23(A) and (B) set forth the "exclusive original" and "original jurisdiction" of the juvenile courts. Visitation is not included within those grants of authority. *In re R.G*., 2021-Ohio-93, ¶ 21 (9th Dist.). The Ohio Supreme Court has further held that a juvenile court cannot hear a grandparent's complaint seeking only visitation through its authority over custody under R.C. 2151.23(A)(2). *In re Gibson* at syllabus.

{¶ 13} While the General Assembly has expressly extended the powers and jurisdiction of the court of common pleas to the domestic-relations and juvenile divisions in certain counties, Madison County is not among them. R.C. 2301.03(D)(2), (E)(2), (F)(2), (G)(2), (I)(2), (K)(2), (M)(2), and (O)(2) (explicitly stating that the judges of the juvenile divisions in Lucas, Mahoning, Montgomery, Richland, Summit, Butler, Lake, and Greene Counties "shall . . . exercise the same powers and jurisdiction . . . as [the] other judges of the court of common pleas"). The General Assembly has conferred no similar "powers and jurisdiction" on the juvenile division in Madison County. We note the only juvenile division in this court's jurisdiction with the "same powers and jurisdiction" as those

of the court of common pleas is in Butler County. Therefore, the holding in this opinion would not apply to the courts in Butler County's juvenile division.

{¶ 14} The Ohio Supreme Court's more recent analysis of a juvenile court's jurisdiction further confirms the limited nature of that authority. *State ex rel. Reynolds v. Kirby*, 2023-Ohio-782. In *Kirby*, the question concerned whether a juvenile court could grant immunity for a criminal act, but the Court's reasoning applies here as well. The Court emphasized that a juvenile court's powers are restricted to those expressly granted in R.C. Chapters 2151 and 2152, and that "[n]othing in R.C. 2151.23—or R.C. Chapters 2151 and 2152 generally—gives the juvenile court" authority beyond those enumerated matters. *Id*. at ¶ 15. *See In re C.D.*, 2024-Ohio-6047, ¶ 19 (6th Dist.) (applying the same jurisdictional analysis to R.C. 3109.12, a related statute concerning unwed parents).

{¶ 15} Moreover, in *State ex rel. Jones v. Paschke*, 2024-Ohio-135, the Ohio Supreme Court held that R.C. 3109.11 "gives general divisions of courts of common pleas jurisdiction over grandparents' complaints requesting companionship or visitation." *Id*. at ¶ 10.

{¶ 16} Because the General Assembly has not extended the powers of the court of common pleas to the juvenile court in Madison County, the juvenile court does not share the same jurisdiction as the Madison County Court of Common Pleas' general division. Accordingly, the juvenile court always lacked subject-matter jurisdiction to award visitation to Grandfather in this matter. R.C. 3109.11.

*In re K.P.R.*

{¶ 17} In reaching this conclusion, we recognize that this court previously held that a stepfather could request visitation under R.C. 3109.11 and that the juvenile court had jurisdiction to consider such a motion. *In re K.P.R.*, 2011-Ohio-6114, ¶ 26 (12th Dist.). However, since that decision, the Ohio Supreme Court has issued *Kirby* and *Paschke*,

- 5 -

providing additional guidance regarding the limits of a juvenile court's jurisdiction. Our holding here is further supported by decisions from our sister districts. *In re Burrows*, 2004-Ohio-2619, ¶ 10 (3d Dist.); *In re R.G.* 2021-Ohio-93, at ¶ 26 (9th Dist.); *In re C.D.*, 2024-Ohio-6047, at ¶ 30 (6th Dist.).

*Conclusion*

{¶ 18} Because the Madison County Court of Common Pleas, Juvenile Division, issued the judgment here without subject-matter jurisdiction, it is void and must be vacated. In light of this determination, we need not address Mother's assignments of error.

{¶ 19} Judgment vacated.

HENDRICKSON, P.J., and M. POWELL, J., concur.

_____
# J U D G M E N T   E N T R Y

The appeal, briefs, and supplemental briefs of the parties before this court, it is the order of this court that the judgment or order appealed from be, and the same hereby is, vacated since the juvenile court lacked subject-matter jurisdiction, and appellant's assignments of error are moot and need not be addressed.

It is further ordered that a mandate be sent to the Madison County Court of Common Pleas, Juvenile Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed 50% to appellant and 50% to appellee.

*/s/ Robert A. Hendrickson, Presiding Judge*

*/s/ Mike Powell, Judge*

*/s/ Melena S. Siebert, Judge*