[Cite as *In re J.L.M.*, 2018-Ohio-2175.]

STATE OF OHIO            )                    IN THE COURT OF APPEALS
                        )ss:                 NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT         )

IN RE: J.L.M.                                C.A. No.      28867
       R.J.


                                             APPEAL FROM JUDGMENT
                                             ENTERED IN THE
                                             COURT OF COMMON PLEAS
                                             COUNTY OF SUMMIT, OHIO
                                             CASE Nos.    DN 14-10-0664
                                                          DN 14-10-0665

DECISION AND JOURNAL ENTRY

Dated: June 6, 2018

HENSAL, Judge.

**{¶1}** Appellants Maternal Great Grandparents ("Great Grandparents" or "Legal Custodians") appeal the judgment of the Summit County Court of Common Pleas, Juvenile Division, that allowed Maternal Grandmother ("Grandmother") to intervene and granted her visitation with the children J.L.M and R.J. For the following reasons, this Court affirms.

I.

**{¶2}** Mother and Father were not married when Mother gave birth to J.L.M (d.o.b. 2/19/13) and R.J. (d.o.b. 4/4/14). Based on concerns regarding neglect, physical abuse, and drug use in the parents' home, Summit County Children Services Board ("CSB") instituted a safety plan shortly after R.J.'s birth, whereby the children were placed with Great Grandparents. At the same time, Mother and Father had supervised visitation and agreed to participate in drug treatment services. When Mother and Father failed to follow through with drug treatment, thereby leaving the children at risk and preventing reunification, CSB filed complaints on

October 16, 2014, alleging that J.L.M. was a dependent and neglected child, and that R.J. was a dependent and abused child.

{¶3} At the later adjudicatory and dispositional hearings, Mother and Father both agreed that J.L.M. was dependent and neglected, that R.J. was dependent and abused, and that the children would be placed in the temporary custody of Great Grandparents, while CSB would retain an order of protective supervision. The agency subsequently filed a motion for legal custody to Great Grandparents. After a hearing, the juvenile court granted CSB's motion, awarding legal custody to Great Grandparents and terminating the order of protective supervision. Mother and Father were both awarded visitation with the children as the parties might agree, but in no event fewer than three hours of supervised visitation per week. The juvenile court docketed the case as closed.

{¶4} Approximately six months later, Grandmother filed a motion for visitation solely with the older child.[1] Legal Custodians filed a response captioned as and in the style of an answer to a complaint. Although the magistrate found that Grandmother had not properly served all the parties, he nevertheless ordered that she be allowed weekly visitation at a paid visitation center in the interim. The magistrate further appointed a guardian ad litem. Legal Custodians filed a motion to dismiss Grandmother's motion, to show cause, and to stay the visitation order. The magistrate stayed the visitation order and scheduled a show cause hearing, where Grandmother would be required to show cause why she had not paid the deposit for the guardian's fee. At a status hearing two weeks later, the magistrate learned that Mother had died that morning. The magistrate vacated his order staying Grandmother's visitation and reinstated

---

[1] Grandmother identified the child by a different last name than the name evidenced in the case file.

her weekly supervised visitation. Legal Custodians immediately moved to set aside the magistrate's order, arguing inter alia that Grandmother was not a party and had not moved to intervene in the case, and that she had no standing to intervene after final disposition had been ordered. Legal Custodians also filed a motion to stay Grandmother's visitation, arguing that Grandmother lacked standing to move for visitation, that there was no statutory authority to grant Grandmother visitation, and that visitation was not in the best interest of the child.

{¶5} The juvenile court concluded that there was statutory authority to allow a grandparent to move for visitation, but it agreed that Grandmother was not a party and had not moved to intervene so that the court could consider her motion. The juvenile court stayed the order granting Grandmother visitation pending a hearing to determine her standing to intervene. In the meantime, Legal Custodians supplemented their motion to dismiss Grandmother's motion for visitation. The magistrate granted Legal Custodians' motion to dismiss, because Grandmother had not moved to intervene in the case. The juvenile court adopted the decision the same day.

{¶6} Three months later, Grandmother filed a motion to intervene and a motion for visitation with both children based on Mother's death. Legal Custodians renewed their motion to dismiss Grandmother's request for visitation. They raised multiple grounds, including the lack of juvenile court jurisdiction to consider third-party visitation after legal custody has been granted, the lack of statutory authority to allow Grandmother to intervene or obtain visitation rights, and res judicata. Grandmother responded in opposition.

{¶7} After a two-day hearing, the magistrate issued a decision granting Grandmother leave to intervene and ordering that she be allowed to visit with the children for two hours each month at a private visitation center at her expense. Legal Custodians filed timely objections.

After its independent review, the juvenile court overruled Legal Custodians' objections and ordered that Grandmother be permitted to intervene in the action and, further, that she be allowed to have supervised visitation with the children. Legal Custodians filed a timely appeal in which they raise four assignments of error for review. Grandmother filed a brief in response, while CSB filed a notice that the agency would not be participating in the appeal.

II.

## **ASSIGNMENT OF ERROR I**

THE COURT FAILED TO PROPERLY STATE A BASIS FOR ITS SUBJECT MATTER JURISDICTION TO HEAR A THIRD PARTY INTERVENTION AND REQUEST FOR VISITATION SUBSEQUENT TO THE GRANT OF LEGAL CUSTODY[.]

**{¶8}** Great Grandparents argue that the juvenile court lacked subject matter jurisdiction to consider Grandmother's motions to intervene and for visitation with the children. Specifically, Great Grandparents argue that the juvenile court lost jurisdiction to consider such motions, because its original exclusive jurisdiction had terminated as soon as CSB was awarded temporary custody of the children. Great Grandparents' argument is not persuasive.

**{¶9}** The juvenile court's determination regarding its subject matter jurisdiction implicates a question of law which this Court reviews de novo. *Lorain Cty. Children Servs. v. Gossick*, 9th Dist. Lorain No. 13CA010476, 2014-Ohio-3865, ¶ 10. "A juvenile court may exercise jurisdiction only if expressly granted the authority to do so by statute." *Rowell v. Smith*, 133 Ohio St.3d 288, 2012-Ohio-4313, ¶ 13, citing Ohio Constitution, Article IV, Section 4(B); *In re Gibson*, 61 Ohio St.3d 168, 172 (1991); *see also* R.C. 2301.03(I)(2) (applicable to Summit County). Revised Code Section 2301.03(I)(2) provides, in relevant part:

Except in cases that are subject to the exclusive original jurisdiction of the juvenile court, the judge of the juvenile division shall *not* have jurisdiction or the power to hear, and shall not be assigned, any case pertaining to paternity, custody,

*visitation*, child support, or the allocation of parental rights and responsibilities for the care of children or any post-decree proceeding arising from any case pertaining to any of those matters.

(Emphasis added.) The juvenile court has exclusive original jurisdiction under sixteen categories, including, in relevant part:

Concerning any child who on or about the date specified in the complaint * * * is alleged * * * to be a[n] * * * abused, neglected, or dependent child * * *[.]

R.C. 2151.23(A)(1).

{¶10} CSB initiated the underlying case pursuant to Revised Code Section 2151.23(A)(1), when it filed its complaints alleging that the children were abused, neglected, and/or dependent. The Ohio Supreme Court has clarified that the juvenile court operates pursuant to its exclusive original jurisdiction when it holds an adjudicatory hearing, and, if it adjudicates the child abused, neglected, or dependent, when it issues its initial dispositional order pursuant to Revised Code Section 2151.353(A). *State ex rel. Allen Cty. Children Servs. Bd. v. Mercer Cty. Common Pleas Court*, 150 Ohio St.3d 230, 2016-Ohio-7382, ¶ 21. Those dispositions include protective supervision, temporary custody, legal custody, permanent custody, planned permanent living arrangement, and removing the child from the home and issuing a no contact order. R.C. 2151.353(A)(1)-(6). Thereafter, the juvenile court's exclusive jurisdiction terminates and it continues to address ongoing issues in the case pursuant to its exercise of "continuing jurisdiction over the child." *State ex rel. Allen Cty. Children Servs. Bd.* at ¶ 23. Furthermore, Revised Code Section 2151.353(F)(1) provides in relevant part: "The [juvenile] court shall retain jurisdiction over any child for whom the court issues an order of disposition pursuant to division (A) of this section * * * until the child attains the age of eighteen years * * *." Only age or adoption terminates the continuing jurisdiction of the juvenile court. *Id*.

{¶11} In this case, the juvenile court adjudicated the children and placed them in the temporary custody of CSB. Exercising its continuing jurisdiction over the children, the court awarded legal custody to Great Grandparents and closed the case on its docket, "subject to [the juvenile] court's continuing jurisdiction over the Children pursuant to R.C. 2151.353(F)(1)." Admittedly, the juvenile court has no jurisdiction to consider a grandparent's complaint solely for visitation brought pursuant to Revised Code Section 2151.23(A)(2), which grants it exclusive original jurisdiction "to determine custody of any child not a ward of another court of this state[.]" *See In re Gibson*, 61 Ohio St.3d at 171-173. The juvenile court, however, was exercising its continuing jurisdiction pursuant to Revised Code Section 2151.23(A)(1). As a parent of a child placed in the legal custody of another person may move to modify his or her visitation with the child pursuant to the juvenile court's continuing jurisdiction, it is axiomatic that any other person who would otherwise have the right to pursue visitation with the child could also seek to do so pursuant to the court's continuing jurisdiction. Accordingly, as long as Grandmother had a right to seek visitation with the children, the juvenile court had the jurisdiction to consider her request through the exercise of its continuing jurisdiction over these children for whom it previously issued an order of disposition pursuant to Revised Code Section 2151.353(A), arising out of its exclusive original jurisdiction pursuant to Revised Code Section 2151.23(A)(1).

{¶12} Revised Code Sections 3109.11 and 3109.12(A) respectively give any relative, including grandparents, standing to seek visitation with a child whose parent is deceased or whose mother was unmarried at the time of the child's birth. Here, Mother is deceased. Moreover, Mother gave birth to both children while she was unmarried. There is no dispute that Grandmother is the mother, i.e., a relative, of Mother. Because Grandmother has a statutory

right to seek visitation with the children, and the juvenile court retains continuing jurisdiction to issue orders regarding them, the juvenile court did not err by determining that it had jurisdiction to consider Grandmother's motions to intervene and for visitation. Great Grandparents' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE COURT ABUSED ITS DISCRETION IN PERMITTING [GRANDMOTHER] TO INTERVENE AND PROCEED ON HER MOTION FOR VISITATION[.]

**{¶13}** Great Grandparents argue that the juvenile court erred when it permitted Grandmother to intervene for the purpose of prosecuting her motion for visitation. Great Grandparents discuss both intervention of right and permissive intervention. Because the juvenile court concluded that Grandmother had a right to intervene, this Court constrains its discussion to that issue.

**{¶14}** Civil Rule 24(A), addressing intervention of right, states:

Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

This Court reviews a lower court's determination regarding intervention of right de novo, as it implicates a question of law. *In re M.N.*, 9th Dist. Wayne No. 07CA0088, 2008-Ohio-3049, ¶ 5.

**{¶15}** Revised Code Section 3109.11 addresses visitation rights where a parent is deceased, and provides in relevant part:

If either the father or mother of an unmarried minor child is deceased, the court of common pleas in the county in which the minor child resides may grant the parents and other relatives of the deceased father or mother reasonable companionship or visitation rights with respect to the minor child during the

child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and if the court determines that the granting of the companionship or visitation rights is in the best interest of the minor child.

{¶16} Revised Code Section 3109.12 addresses visitation rights where a mother is unmarried, and provides in relevant part:

(A) If a child is born to an unmarried woman, the parents of the woman and any relative of the woman may file a complaint requesting the court of common pleas of the county in which the child resides to grant them reasonable companionship or visitation rights with the child.

{¶17} Great Grandparents argue that this Court's prior opinion in *In re M.N.*, 2008-Ohio-3049, is controlling. In that case, we affirmed the juvenile court's denial of the grandparents' motion to intervene to seek visitation and custody, because there was no evidence that the grandparents had ever acted in loco parentis to the child or assumed any aspect of parental duties for the benefit of the child. *Id.* at ¶ 17. *In re M.N.* is distinguishable from the instant matter, however, by its plain language. The majority expressly noted that there exist statutory mechanisms by which grandparents can "obtain a legal right of access to their grandchildren outside the juvenile custody situation." *Id.* at ¶ 20. This Court then specifically identified Revised Code Sections 3109.11 and 3109.12, which had not been invoked in the case of *In re M.N. Id.* Significantly, too, this Court adopted the test in *In re Schmidt*, 25 Ohio St.3d 331, 336 (1986), that a person seeking visitation with a child must present a "colorable" claim of a right to visitation. *In re M.N.* at ¶ 11.

{¶18} In this case, Grandmother moved to intervene to pursue visitation with the children on the bases that Mother, her daughter, was deceased; and to a lesser extent, because Mother had given birth to both children while unmarried. Accordingly, she claimed a statutory right to visitation pursuant to Revised Code Sections 3109.11 and 3109.12. The parties

stipulated that Mother was deceased and that she was never married. As the evidence demonstrated that Grandmother had a colorable claim of a right to visitation pursuant to statute, the juvenile court did not err by granting Grandmother's motion to intervene in order to prosecute her motion for visitation with the children. Great Grandparents' second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE COURT IMPROPERLY FAILED TO GRANT [LEGAL CUSTODIANS'] MOTION TO DISMISS [GRANDMOTHER'S] MOTION FOR VISITATION ON THE GROUNDS THAT THE CLAIM AND ISSUE INVOLVED THEREIN ARE BARRED BY THE EQUITABLE DOCTRINE OF RES JUDICATA[.]

**{¶19}** Great Grandparents argue that the juvenile court erred by failing to dismiss Grandmother's motion for visitation, because it was barred by the doctrine of res judicata. Specifically, Great Grandparents argue that Grandmother should have sought visitation during the pendency of the underlying dependency, neglect, abuse litigation, and that she is now precluded from pursuing her claim, as she sat on her rights.

> Res judicata is a doctrine of judicial preclusion. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381 (1995). There are two theories on which res judicata operates: claim preclusion (estoppel by judgment) and issue preclusion (collateral estoppel). *Id.* "Under the doctrine of res judicata, '[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.'" *Kelm v. Kelm*, 92 Ohio St.3d 223, 227 (2001), quoting *Grava* at syllabus. Furthermore, res judicata operates to bar litigation of "all claims which were or might have been litigated in a first lawsuit." (Emphasis omitted). *Grava* at 382, quoting *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62 (1990).

> "'Proper application of the doctrine of res judicata requires that the identical cause of action shall have been previously adjudicated in a proceeding with the same parties, in which the party against whom the doctrine is sought to be imposed shall have had a full and fair opportunity to litigate the claim.'" *SunTrust Bank v. Wagshul*, 2d Dist. Montgomery No. 25567, 2013-Ohio-3931, ¶ 8, quoting *Brown v. Vaniman*, 2d Dist. Montgomery No. 17503, 1999 Ohio App. LEXIS 3821, *4 (Aug. 20, 1999).

*J.P. v. T.H.*, 9th Dist. Lorain No. 15CA010897, 2017-Ohio-233, ¶ 25-26.

{¶20} As noted above, the juvenile court retains continuing jurisdiction to issue orders regarding the children pursuant to Revised Code Section 2151.23(F)(1). *See also* R.C. 2151.353(F)(1). Accordingly, the juvenile court has the authority to revisit issues regarding the children's custody, visitation, and support in their best interest.

{¶21} Great Grandparents misconstrue the bases for Grandmother's request for visitation, asserting that her claim arises solely based on her argument that she had acted in loco parentis to the children at the time of their removal. In fact, Grandmother premised her request on statutory grounds primarily pursuant to Revised Code Section 3109.11 that Mother, her daughter, was deceased. Grandmother could not have raised that claim during the pendency of the dependency, neglect, abuse case prior to the court's award of legal custody to Great Grandparents, because Mother had not yet passed away at that time. Under the circumstances, Grandmother's request for visitation with the children was not barred by the doctrine of res judicata, and the juvenile court did not err by failing to dismiss her motion. Great Grandparents' third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

THE COURT'S GRANT OF CLOSELY SUPERVISED VISITATION WITH [GRANDMOTHER] AS IN THE BEST INTEREST OF THE CHILDREN IS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶22} Great Grandparents argue that the juvenile court's award of closely supervised visitation between Grandmother and the children is against the manifest weight of the evidence.

{¶23} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the

[judgment] must be reversed and a new [hearing] ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.  When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶24} In cases where a parent is deceased, the juvenile court shall consider whether visitation is in the best interest of the children, as well as "all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code."  R.C. 3109.11.  The juvenile court may award visitation regarding children born to an unmarried woman based on the same considerations.  R.C. 3109.12(B).  Revised Code Section 3109.051(D) factors include:

> (1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
>
> (2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between the person's residence and the child's residence;
>
> (3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
>
> (4) The age of the child;
>
> (5) The child's adjustment to home, school, and community;
>
> (6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;
>
> (7) The health and safety of the child;
>
> (8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to [domestic violence] involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused or a neglected child;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's rights to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child' parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

{¶25} As an initial matter, this Court notes that, while the juvenile court addressed its express consideration of the relevant factors, Great Grandparents make no reference to the factors enumerated in Revised Code Section 3109.051(D). In addition, except for one citation to a finding (which they challenge) by the juvenile court in its judgment, Great Grandparents have failed to cite to the record in support of their argument, as required by Appellate Rule 16(A)(7). Instead, they construe Mother's and Father's visitation orders arising out of the legal custody judgment as a restriction on Grandmother's ability to see the children; they pose unanswered questions for this Court requiring our speculation; and they note their ongoing "concern for the children based on their personal knowledge and experience of [Grandmother's] past behavior[.]" Under these circumstances, and bearing in mind the presumption in favor of the finder of fact, Great Grandparents have failed to demonstrate that the juvenile court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new hearing ordered. *See Eastley* at ¶ 21.

{¶26} To the extent that the juvenile court acknowledged any concerns regarding Grandmother's ability to influence the children or their exposure to her, those concerns were outweighed by the benefit of having a relationship with their deceased mother's family in a strictly limited and controlled environment. The juvenile court limited Grandmother's visitation with the children to one two-hour supervised visit each month in a structured, commercial visitation center, for which Grandmother must bear the cost. Because the visitation supervisor would have the authority to deny Grandmother the ability to visit with the children on the center's premises if she appeared to be under the influence of drugs or alcohol, or if she violated the juvenile court's restrictions on certain topics of conversation with the children, any grave concerns for the safety and well-being of the children are alleviated. Accordingly, the juvenile

court's highly restricted visitation award for Grandmother was not against the manifest weight of the evidence. Great Grandparents' fourth assignment of error is overruled.

## III.

{¶27} Great Grandparents' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

_____
JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

CHRISTOPHER VANDEVERE, Attorney at Law, for Appellants.

CHRISTINE D. FINAN, Attorney at Law, for Appellee.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

R.J., pro se, Father.

GINA D'AURELIO, Guardian ad Litem.