IN RE GIBSON.

[Cite as *In re Gibson* (1991), 61 Ohio St.3d 168.]

(No. 90–1049—Submitted May 7, 1991—Decided July 24, 1991.)

*Paul D. Gilbert, pro se.*

*Jeffrey E. Froelich* and *F. Ann Crossman,* for appellees.

MOYER, C.J.  The question presented is whether the juvenile court had jurisdiction to entertain Gilbert's complaint for visitation with his grandson. The court of appeals determined that the juvenile court lacked such jurisdiction.  We affirm.

In *In re Whitaker* (1988), 36 Ohio St.3d 213, 522 N.E.2d 563, we discussed the status of grandparental visitation rights in the context of a dissolution of marriage.  We stated that "Ohio has two statutes that confer visitation rights upon nonparents: R.C. 3109.11 and 3109.05(B)."  *Id.* at 215, 522 N.E.2d at 565. After reviewing those statutes, we concluded that grandparental visitation rights in Ohio "do not vest until the occurrence of a disruptive precipitating event, such as parental death or divorce.  Otherwise, the common-law view of deferring to parental autonomy in raising the child is observed despite any moral or social obligations that may encourage contact between grandparents and grandchildren."  (Footnote omitted.)  *Id.* at 215, 522 N.E.2d at 566.

Although recent statutory amendments have no effect on the outcome of this case, we note that those amendments for the most part are consistent with the holding of *Whitaker*.[1] The General Assembly has added a new section, R.C. 3109.051, which provides in subdivision (B)(1) that grandparental visitation may be granted in cases involving "a divorce, dissolution of marriage, legal separation, annulment, or child support proceeding that involves a child * * *." R.C. 3109.11 continues to allow for visitation with a child by those persons, including grandparents, who are related to the child's deceased parent. In one departure from the "disruptive precipitating event" principle, R.C. 3109.12 has been added to allow grandparental visitation in the case of "a child * * * born to an unmarried woman." Nevertheless, even with these changes, R.C. Chapter 3109 continues to honor parental autonomy when the natural parents of the child have remained married throughout the child's lifetime without disruption.

Apparently in view of our holding in *Whitaker*, Gilbert no longer relies on former R.C. 3109.05(B) as a basis for his argument. He has not alleged the occurrence of any disruptive precipitating event. Instead, Gilbert now relies upon a series of statutes governing the juvenile court. He first cites R.C. 2151.23(A)(2), which provides that the juvenile court has exclusive original jurisdiction "[t]o determine the custody of any child not a ward of another court of this state." He next relies on R.C. 2151.23(F)(1), which provides that "[t]he juvenile court shall exercise its jurisdiction in child custody matters in accordance with sections * * * 3109.21 to 3109.36 * * * of the Revised Code." Using R.C. 2151.23(F)(1), Gilbert further relies on former R.C. 3109.21(B), which provided, for purposes of the Uniform Child Custody Jurisdiction Act ("UCCJA") in R.C. 3109.21 to 3109.37, that " 'custody determination' means a court decision and court orders and instructions providing for the custody of a child, including visitation rights." [2] He uses former R.C. 3109.21(B) in an attempt to show that "custody" includes "visitation" and that the juvenile court may hear a complaint for visitation pursuant to its power to determine "custody" cases.

In the alternative, Gilbert also contends that he has been denied equal protection of the laws because some grandparents allegedly can obtain visitation in Ohio under the "custody determination" definition in the UCCJA, while

---

1. The juvenile court dismissed Gilbert's complaint in 1989, before the amendments resulting from Am.Sub.H.B. No. 15 (143 Ohio Laws ——) and Am.Sub.S.B. No. 3 (143 Ohio Laws ——) took effect in May 1990 and April 1991, respectively.

2. R.C. 3109.21(B) and other UCCJA sections were amended by Am.Sub.S.B. No. 3 (143 Ohio Laws ——).

he cannot. He also asserts that Ohio courts possess inherent equitable power to act as *parens patriae* in the best interests of his grandson.

These arguments are not persuasive. They were waived when Gilbert failed to raise them in the juvenile court, and are not supported by law.

Gilbert misunderstands the meaning of the term "custody." "Visitation" and "custody" are related but distinct legal concepts. "Custody" resides in the party or parties who have the right to ultimate legal and physical control of a child. "Visitation" resides in a noncustodial party and encompasses that party's right to visit the child. See former R.C. 3109.05(B) (court may allow "parent who is deprived of the care, custody, and control of the children to visit them * * *."). In other words, "visitation" is granted to someone who does not have "custody." Although a party exercising visitation rights might gain temporary physical control over the child for that purpose, such control does not constitute "custody" because the legal authority to make fundamental decisions about the child's welfare remains with the custodial party and because the child eventually must be returned to the more permanent setting provided by that party. See *Patrick v. Patrick* (1962), 17 Wis.2d 434, 438, 117 N.W.2d 256, 259 (party having visitation does "not have custody during * * * visits, but only such obligation and authority as are practical necessities during such visits."); *Westrate v. Westrate* (App.1985), 124 Wis.2d 244, 248, 369 N.W.2d 165, 168 ("visitation differs from custody because the noncustodial parent and child do not live together as a single family unit."). In asking for visitation only, Gilbert was not asking the juvenile court to determine or award him "custody."

Gilbert's reliance on R.C. 2151.23(F)(1) and former R.C. 3109.21(B) is misplaced. Former R.C. 3109.21(B) was a definitional provision in the UCCJA. The definition of "custody determination" as "including visitation rights" was expressly limited in effect to the four corners of the UCCJA. Therefore, the definition of "custody determination" in former R.C. 3109.21(B) did not fix the meaning of "custody" in R.C. 2151.23(A)(2). Furthermore, in using the phrase "including visitation rights," the drafters of the UCCJA apparently recognized that "custody" does not encompass visitation and that an express provision "including visitation" was necessary to bring orders affecting visitation within the scope of the UCCJA. The drafters were creating a special definition for purposes of the UCCJA, and were not redefining "custody." Therefore, the definition of "custody determination" does not change our conclusion that custody and visitation are separate. The complaint of a grandparent seeking only visitation with a grandchild may not be determined by the juvenile court pursuant to its authority to determine the "custody" of children under R.C.

2151.23(A)(2).[3] Accordingly, the juvenile court did not have jurisdiction under that statute to hear Gilbert's complaint for visitation.

Gilbert seems to contend that the UCCJA itself gave the juvenile court jurisdiction to hear his complaint for visitation. However, he relies only on the provision defining "custody determination." He does not specify any operative provision of the UCCJA that gave the juvenile court jurisdiction over his complaint. In summary, Gilbert's statutory arguments are without merit.

We also reject Gilbert's equal protection claim. In asserting that some grandparents can obtain visitation under the definition of "custody determination" in the UCCJA, Gilbert is apparently referring to those grandparents in his position who might obtain a visitation decree in another state pursuant to broader grandparental visitation laws there. Having obtained such a "custody determination" in another state, those grandparents could later seek enforcement of the foreign decree in Ohio courts. See R.C. 3109.30(B) and former R.C. 3109.32(A).

Although Gilbert may be treated differently than some of those grandparents seeking the enforcement of out-of-state visitation decrees, we find no denial of equal protection. Grandparents who have obtained an out-of-state decree are not similarly situated to Gilbert. Unlike Gilbert, they have obtained a judgment that is generally entitled to full faith and credit in the absence of changed circumstances. See *Williams v. Williams* (1975), 44 Ohio St.2d 28, 73 O.O.2d 121, 336 N.E.2d 426, syllabus. Furthermore, in adopting the UCCJA, Ohio has reasonably determined that such judgments should be enforced to discourage the shuttling of children from state to state for the purpose of forum shopping. See Uniform Child Custody Jurisdiction Act (1988), 9 U.L.A. Part I, 115, Prefatory Note and Section 1(a)(1), at 116–118, 123–124. Under these circumstances, Gilbert has not been denied equal protection of the laws.

Finally, we reject Gilbert's contention that Ohio courts have inherent equitable jurisdiction to determine his grandson's best interests. The juvenile court possesses only the jurisdiction that the General Assembly has expressly conferred upon it. See Section 4(B), Article IV of the Ohio Constitution; *Seventh Urban, Inc. v. University Circle Property Dev.* (1981), 67 Ohio St.2d 19, 22, 21 O.O.3d 12, 14, 423 N.E.2d 1070, 1073. Gilbert has pointed to no statute that gives the juvenile court jurisdiction to determine his complaint for visitation. We cannot go beyond the statutes and find jurisdiction on some

---

3. We express no opinion here regarding the juvenile court's authority to order visitation when it is ruling on a complaint seeking a determination of custody.

other basis. See *In re Fore* (1958), 168 Ohio St. 363, 370, 7 O.O.2d 127, 131, 155 N.E.2d 194, 199.

For the foregoing reasons, we hold that the juvenile court did not err when it dismissed Gilbert's complaint for visitation. We affirm the judgment of the court of appeals.

*Judgment affirmed.*

SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.