ROWELL, APPELLANT, *v.* SMITH, APPELLEE.

[Cite as *Rowell v. Smith,* 133 Ohio St.3d 288, 2012-Ohio-4313.]

*In exercising its jurisdiction under R.C. 2151.23(A)(2), a juvenile court may issue temporary visitation orders that are in the best interest of the minor child during the litigation—Juv.R. 13(B)(1).*

(No. 2011-1053—Submitted May 8, 2012—Decided September 26, 2012.)

APPEAL from the Court of Appeals for Franklin County,

Nos. 10AP-675 and 10AP-708, 2011-Ohio-2809.

_____

SYLLABUS OF THE COURT

In exercising its jurisdiction under R.C. 2151.23(A)(2), a juvenile court may issue temporary visitation orders that are in the best interest of the minor child during the litigation. Juv.R. 13(B)(1).

_____

LUNDBERG STRATTON, J.

{¶ 1} We must determine whether a juvenile court may issue temporary visitation orders in a pending case for custody under R.C. 2151.23(A)(2) between a parent and nonparent. For the reasons that follow, we hold that in exercising its jurisdiction under R.C. 2151.23(A)(2), a juvenile court may issue temporary visitation orders that are in the best interest of the minor child during the litigation.

{¶ 2} Consequently, we reverse the judgment of the court of appeals and reinstate the trial court's orders of June 30, 2010, and July 27, 2010.

Facts and Procedural History

{¶ 3} On September 9, 2003, appellee, Julie Ann Smith, gave birth to a daughter as the result of artificial insemination with sperm from an unknown

donor. At the time, Smith was involved in a relationship with appellant, Julie Rose Rowell. Several years later, when Smith and Rowell's relationship ended, Rowell filed a petition in juvenile court pursuant to R.C. 2151.23(A)(2) seeking an order for shared custody of the minor child and simultaneously requesting a temporary order granting her companionship time with the child.

{¶ 4} A magistrate issued a temporary order granting Rowell and Smith shared custody of the child. Smith moved to set aside the order. On January 15, 2009, the juvenile court granted Smith's motion to set aside the magistrate's temporary order, but issued another temporary order that again granted Rowell and Smith shared custody. On January 26, 2009, the court modified its previous order per Civ.R. 60(A) and issued another temporary order, this time designating Smith as the child's legal custodian and residential parent and granting Rowell visitation rights.

{¶ 5} Soon thereafter, Rowell filed a motion for contempt for Smith's failure to comply with the court's orders. Smith opposed Rowell's motion, arguing that the court had not had jurisdiction to award visitation rights to Rowell, so it also did not have the power to enforce the visitation order through contempt. On June 23, 2009, the trial court issued a decision and judgment entry finding Smith in contempt of its order of January 26, 2009. The court held that it had authority to issue temporary orders under Juv.R. 13(B)(1) and Loc.R. 5(D) of the Court of Common Pleas of Franklin County, Juvenile Division, allowing nonparent visitation and that Smith had violated the January 26, 2009 order and was in contempt. Smith filed a notice of appeal.

{¶ 6} The court of appeals reversed the finding of contempt, holding that the juvenile court had improperly used Civ.R. 60(A) to make a substantive change to the January 26, 2009 order on which the contempt finding was based. 186 Ohio App.3d 717, 2010-Ohio-260, 930 N.E.2d 360.

**{¶ 7}** On February 18, 2010, a magistrate again issued an order that designated Smith as the child's temporary custodian and granted Rowell temporary visitation. When Smith failed to comply with the February 18 order, Rowell filed another motion for an order finding Smith in contempt. On March 22, 2010, a magistrate found Smith guilty of contempt and sentenced her to three days in jail, suspending the sentence if within 30 days of the order, Smith purged herself of contempt by allowing visitation and paying Rowell $2,500 for attorney fees and costs associated with prosecuting the motion for contempt. Smith failed to comply with the order giving her the terms of the opportunity to purge the contempt, and on June 28, 2010, Rowell moved for enforcement of the March 22 order. Smith filed objections to the magistrate's March 22 decision.

**{¶ 8}** On June 30, 2010, the trial court overruled Smith's objections to the magistrate's decision and issued a decision and judgment entry of contempt. Smith appealed this decision to the Franklin County Court of Appeals in case No. 10AP-675.

**{¶ 9}** Initially, the court of appeals stayed the trial court's imposition of the three-day jail sentence pending appeal, but in doing so, it stated: "The trial court orders in regard to visitation with the minor child are not stayed by virtue of this entry. This court will revisit the matter of this stay in the event [Smith] continues to violate orders of court." Smith continued to disobey the court's order, so the appellate court released its stay and directed Rowell to apply to the trial court for enforcement orders.

**{¶ 10}** On July 27, 2010, the court granted Rowell's motion to enforce the contempt order. Smith appealed this decision to the Franklin County Court of Appeals in case No. 10AP-708.

**{¶ 11}** The court of appeals consolidated the appeals and stayed the trial court's orders pending the outcome of the appeal. In a split decision, the court of appeals held that the juvenile court lacked authority to order visitation in an R.C.

2151.23(A)(2) custody case; thus, the court held, the underlying temporary order of February 18, 2010, was invalid and Smith could not be in contempt of an invalid order. The appellate court reversed the judgments and remanded the cause for further proceedings.

{¶ 12} The cause is before this court upon our acceptance of a discretionary appeal. 130 Ohio St.3d 1415, 2011-Ohio-5605, 956 N.E.2d 308.

Analysis

{¶ 13} A juvenile court may exercise jurisdiction only if expressly granted the authority to do so by statute. *See* Ohio Constitution, Article IV, Section 4(B); R.C. 2301.03(A); *In re Gibson*, 61 Ohio St.3d 168, 172, 573 N.E.2d 1074 (1991). The term "jurisdiction" encompasses both subject-matter jurisdiction, i.e., the court's power to adjudicate the merits of a case, and the exercise of that jurisdiction. " 'Once a tribunal has jurisdiction over both the subject matter of an action and the parties to it, "* * * the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred * * *." ' " *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 12, quoting *State ex rel. Pizza v. Rayford,* 62 Ohio St.3d 382, 384, 582 N.E.2d 992 (1992), quoting *Sheldon's Lessee v. Newton,* 3 Ohio St. 494, 499 (1854).

{¶ 14} In this case, Rowell filed her petition for shared custody under R.C. 2151.23(A)(2), which grants juvenile courts exclusive original jurisdiction "to determine the custody of any child not a ward of another court of this state." This includes "custodial claims brought by the persons considered nonparents at law." *In re Bonfield*, 97 Ohio St.3d 387, 2002-Ohio-6660, 780 N.E.2d 241, ¶ 43. Having acquired subject-matter jurisdiction, the juvenile court then issued temporary orders to permit visitation between Rowell and the minor child who is the subject of the complaint while the case was pending, citing as authority Juv.R. 13(B)(1) and Loc.R. 5(D) of the Court of Common Pleas of Franklin County,

Juvenile Division.[1]  Under Juv.R. 13(B)(1), a "judge or magistrate may issue temporary orders with respect to the relations and conduct of other persons toward a child who is the subject of the complaint as the child's interest and welfare may require."

{¶ 15} On appeal to the court of appeals, Smith argued that a court must have statutory authority to act and that R.C. 2151.23(A)(2) confers jurisdiction to determine custody but does not authorize a court to grant visitation rights.  Smith cited *In re Gibson*, 61 Ohio St.3d 168, 573 N.E.2d 1074, in support of this argument.  Thus, according to Smith, the juvenile court lacked authority to issue the underlying order for visitation.  The court of appeals agreed and reversed the order of contempt.

{¶ 16} *In re Gibson* involved a grandparent who filed a complaint seeking visitation rights with a grandchild who was in the custody of his parents.  The grandparent alleged that R.C. 2151.23(A)(2), among other statutes, conferred jurisdiction upon the juvenile court to award visitation rights because custody includes visitation.  But his complaint did not seek an order of custody under R.C. 2151.23(A)(2).

{¶ 17} The court in *Gibson* reasoned that custody and visitation, although related, are two distinct legal concepts.  "In asking for visitation only, [the grandfather] was not asking the juvenile court to determine or award him 'custody.' "  *Id.* at 171.  Thus, we held that R.C. 2151.23(A)(2) does not confer jurisdiction on the juvenile court to determine "[t]he complaint of a grandparent *seeking only visitation* with a grandchild."  (Emphasis added.)  *Id.* at syllabus. The court expressly reserved its opinion regarding a juvenile court's authority to

---

1. Loc.R. 5(D) of the Court of Common Pleas of Franklin County, Juvenile Division, provides that "[t]he Judge or Magistrate may require motions for temporary orders to be submitted and determined without oral hearing upon affidavits in support or opposition."

order visitation when ruling on a complaint seeking a determination of custody—exactly the situation here. *Id.* at 172, fn. 3. Thus, *Gibson* is inapposite.

{¶ 18} The dissenting judge in the court of appeals in this case found persuasive an opinion by the Eighth District Court of Appeals that affirmed a juvenile court's order granting temporary visitation rights under circumstances similar to the facts in this case. In the Eighth District case, Rita Goodman sought custody of and/or companionship rights with two children after her long-time relationship with the children's biological mother ended. *In re LaPiana*, 8th Dist. Nos. 93691 and 93692, 2010-Ohio-3606. The court reasoned that per *In re Bonfield*, Goodman had a legal right to seek shared custody under R.C. 2151.23 and that in such cases, it is the responsibility of the court to act in the best interest of the child. *Id.*, ¶ 20-21. Thus, the court concluded, the juvenile court had jurisdiction to determine not only the issue of custody of the children but also whether it was in the children's best interest to have companionship with the nonparent. *Id.*, ¶ 27.[2]

{¶ 19} Here, the juvenile court relied on Juv.R. 13(B)(1) in granting Rowell visitation rights with the minor who was the subject of the pending R.C. 2151.23 custody case. Construing the juvenile rules liberally, as we must, *see* Juv.R. 1(B), we hold that a juvenile court may issue temporary visitation orders in cases within its jurisdiction under R.C. 2151.23 if it is in the child's best interest.

{¶ 20} Smith contends that this interpretation of the Rules of Juvenile Procedure violates her fundamental rights as a parent, which are protected by the United States Constitution. In support of this argument, Smith cites *Troxel v.*

---

2. *LaPiana* also relied, in part, on our dismissal of a petition for a writ of prohibition in *State ex rel. Smith v. Gill*, 125 Ohio St.3d 1459, 2010-Ohio-2753, 928 N.E.2d 735. In that case, Smith alleged that the juvenile court patently and unambiguously lacked jurisdiction to issue the orders of visitation between Rowell and the minor child. The Eighth District reasoned that our dismissal indicated that the Franklin County Juvenile court had jurisdiction; otherwise we would have granted the writ. *LaPiana*, ¶ 26.

*Granville*, 530 U.S. 57, 66-67, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion) (parents have a fundamental right to make decisions concerning the care, custody, and control of their children that is protected from government interference by the Due Process Clause of the Fourteenth Amendment to the United States Constitution). According to Smith, a court may not grant visitation rights to a nonparent under R.C. 2151.23(A)(2), even temporarily, until the issue of custody is determined; otherwise, the order is an infringement on the parent's fundamental rights.

{¶ 21} We discussed *Troxel* within the realm of Ohio's nonparental-visitation statutes in *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165. We acknowledged that *Troxel* states that there is "a presumption that fit parents act in the best interest of their children." *Id.* at ¶ 44. But that presumption is not irrebuttable. "Moreover, nothing in *Troxel* suggests that a parent's wishes should be placed before a child's best interest." *Id.*

{¶ 22} Here, the juvenile court had subject-matter jurisdiction over the case under R.C. 2151.23, it afforded Smith the opportunity to be heard on the issue of visitation, and it had discretion under Juv.R. 13(B) to issue a temporary visitation order, so long as it was in the child's best interest. Within these parameters, we find that the court had authority to grant the temporary order and that the temporary order did not violate Smith's fundamental rights.

{¶ 23} Smith argues that if we reverse the judgment of the appellate court, we are interpreting the law as giving juvenile courts summary power and unfettered discretion to grant visitation to a nonrelative. We disagree. The court's actions must be in the child's best interest. Moreover, Smith's interpretation of the law is illogical. Under her interpretation, the General Assembly granted authority for juvenile courts to determine the custody of a child but did not give them authority to determine whether a party to the custody action can visit with the child while the action is pending.

**{¶ 24}** Smith also emphasizes that she never intended to share custody with Rowell, but that is a question at issue in the custody case that does not need to be answered for purposes of our opinion today.

**{¶ 25}** In addition, Smith contends that Juv.R. 13(B) did not authorize the visitation order, because Juv.R. 1(C)(4) states that the Rules of Juvenile Procedure do not apply to "proceedings to determine parent-child relationship." But the underlying claim involves a matter of shared custody, not a matter of parentage. Thus, the exception in Juv.R. 1(C) for proceedings to determine parent-child relationships does not apply here.

Conclusion

**{¶ 26}** Consequently, we hold that in exercising its jurisdiction under R.C. 2151.23(A)(2), a juvenile court may issue temporary visitation orders that are in the best interest of the minor child during the litigation.

**{¶ 27}** Accordingly, we reverse the judgment of the court of appeals and reinstate the trial court's orders of June 30, 2010, and July 27, 2010.

Judgment reversed.

O'CONNOR, C.J., and PFEIFER, LANZINGER, and MCGEE BROWN, JJ., concur.

O'DONNELL and CUPP, JJ., dissent.

———————————

**MCGEE BROWN, J., concurring.**

**{¶ 28}** I concur in the majority's reversal of the court of appeals' judgment and its reinstatement of the trial court's June 30, 2010 contempt order and July 27, 2010 order enforcing contempt. However, I write separately because I would order appellee, Julie Ann Smith, to appear and show cause why she should not be held in contempt for her blatant refusal to comply with this court's July 7, 2011 order.

**{¶ 29}** Smith has effectively denied Rowell contact with the minor child for three years. She has not followed any of the visitation orders that have been issued and has appealed every contempt sanction, resulting in delay and continued denial of visitation. Even this court's July 7, 2011 order reinstating temporary visitation orders pending the resolution of Rowell's appeal before this court was ignored.

**{¶ 30}** Punishment for contempt may be appropriate when a party is found guilty of "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer." R.C. 2705.02(A). A contemptuous act "brings the administration of justice into disrespect" and "obstruct[s] a court in the performance of its functions." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), at paragraph one of the syllabus. "Fundamentally, the law of contempt is intended to uphold and ensure the effective administration of justice. Of equal importance is the need to secure the dignity of the court and to affirm the supremacy of law. For these reasons, a court's order must be obeyed." *Cramer v. Petrie*, 70 Ohio St.3d 131, 133, 637 N.E.2d 882 (1994). It is our duty to ensure that the whims of the individual ultimately bend to the law, rather than allowing the law to bend to the whims of the individual. *Id.* at fn. 1. Accordingly, a party must not be permitted to ignore a court's order, even when she disagrees with it.

**{¶ 31}** Smith was instructed to allow Rowell to exercise visitation with the child in orders that came from the trial court, the court of appeals, and this court. Because she believes herself to be the best authority on the legal validity of temporary visitation orders, Smith has thumbed her nose at every level of court in this state, for more than three years.

**{¶ 32}** Smith first began to flout court-ordered visitation in January 2009 by reducing Rowell's visitation with the child. The trial court found Smith in contempt in June 2009 and ordered Smith to serve three days in jail, but

suspended the sentence on the condition that Smith purge the contempt by obeying the visitation order. Soon after the trial court's June 2009 judgment, Smith refused to allow Rowell to have any visitation with the child. After a subsequent temporary visitation order was issued in February 2010, Smith continued to refuse to allow any contact between Rowell and the child. During a March 2010 contempt hearing, Smith admitted under oath that she had not complied with the terms of the visitation order in any respect, that she had no intention of following the order, and that she was fully aware of the possible sanctions for contempt. The trial court found Smith in contempt in June 2010 and ordered Smith to serve three days in jail, but again suspended the sentence on the condition that Smith purge the contempt by paying Rowell's attorney fees and allowing visitation. Smith continued to deny visitation, and in July 2010, the trial court granted Rowell's motion to enforce the court's contempt order.

{¶ 33} Although the Tenth District Court of Appeals stayed the contempt order while Smith's appeal was pending, it ordered Smith to comply with the February 2010 temporary visitation order. Once again, Smith refused to comply. In light of Smith's contumacious behavior, the appellate court vacated its partial stay in September 2010 and instructed Rowell to apply to the trial court for enforcement orders.

{¶ 34} When the matter came before this court on appeal, we granted Rowell's motion to stay the decision of the Tenth District Court of Appeals and reinstated the trial court's temporary visitation orders. Notwithstanding the order from this court, Smith refused to comply.

{¶ 35} Smith has blatantly disregarded the trial court's authority, the appellate court's authority, and this court's authority, and has shown immense disrespect toward the judicial proceedings. Her disdain for the authority of Ohio's courts is particularly egregious since Smith herself is an attorney. Smith's actions could even be cause for disciplinary action. *See, e.g.*, *Stark Cty. Bar Assn.*

*v. Ake*, 111 Ohio St.3d 266, 2006-Ohio-5704, 855 N.E.2d 1206 (attorney was found to have committed professional misconduct by repeatedly and deliberately ignoring a domestic court's orders in divorce proceedings in which the attorney was a party); *Disciplinary Counsel v. Hiltbrand*, 110 Ohio St.3d 214, 2006-Ohio-4250, 852 N.E.2d 733, ¶ 10 and 11 (attorney was found to have committed professional misconduct by violating a court order in a civil lawsuit in which she was a party).

{¶ 36} The fact that Smith has so far been able to brazenly and continuously defy court orders with impunity sends a dangerous message to Ohio's domestic-relations litigants. Beyond harming the integrity of the courts, Smith's actions have also harmed her child. From her birth in 2003 until 2009, the child had a relationship with Rowell. For three years, Smith has denied Rowell and the child visitation with each other. Although Smith has her reasons for not wanting to be involved with Rowell, the juvenile court found that it was in the child's best interest to have a relationship with Rowell. Smith's disregard of lawful court orders has done harm to this relationship.

{¶ 37} The integrity of the courts and the enforcement of court orders are critical to our system of justice. For these reasons, I would issue a show-cause order compelling Smith to explain why she should not be held in contempt of this court's order.

PFEIFER, J., concurs in the foregoing opinion.

_____

**CUPP, J., dissenting.**

{¶ 38} Respectfully, I dissent.

{¶ 39} This litigation arises from two trial court orders. In the first, the trial court found appellee, Julie Smith, to be in contempt of its temporary visitation order and sentenced her to three days in jail, suspending the sentence to allow Smith to purge herself of contempt. In the second order, the trial court

found that Smith had failed to purge the contempt and ordered her to serve the three-day jail sentence. However, the behavior underlying the contempt finding and enforcement action has ceased. In February 2012, the trial court issued a judgment entry in which it awarded shared custody of the child to appellant, Julie Rowell, and Smith, along with a specific companionship schedule and other related terms. As of the time of oral argument, no appeal had been taken from this order, and there are no allegations that Smith is presently violating the terms of the custody order. From all appearances, the custody arrangements for this child have stabilized. Consequently, this case is moot and there is no actual controversy pertaining to the contempt proceedings presented to this court in this appeal. I would dismiss this appeal as moot.

O'DONNELL, J., concurs in the foregoing opinion.

_____

Massucci & Kline, L.L.C., and LeeAnn Massucci; and Carol Ann Fey, for appellant.

Gary J. Gottfried Co., L.P.A., Gary J. Gottfried, and Eric M. Brown, for appellee.

Einstein & Poling, L.L.C., and Dianne Einstein, urging affirmance for amici curiae, Marlin and Jennifer Herrick.

_____