[Cite as *In re K.A.Y.*, 2019-Ohio-68.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106788**

## IN RE: K.A.Y.

[Appeal By R.K., Paternal Grandmother]

**JUDGMENT:**
REVERSED; VACATED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Juvenile Division
Case No. CU-10-108019

**BEFORE:** E.A. Gallagher, P.J., Kilbane, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** January 10, 2019

**ATTORNEY FOR APPELLANT**

Phyllis Brooks
1220 West 6th Street, Suite 203
Cleveland, Ohio 44113

**ATTORNEY FOR APPELLEE**

Ellen S. Mandell
25700 Science Park Drive, Suite 160
Beachwood, Ohio    44122-7317

**ALSO LISTED**

**FATHER**

A.K. II, pro se
18044 Nancy Drive
Cleveland, Ohio 44121

EILEEN A. GALLAGHER, P.J.:

{¶1} Appellant R.K., the paternal grandmother of K.A.Y. (the "grandmother"),    appeals from orders issued by the juvenile court (1) denying her motion to vacate a restraining order that precluded her from coming within 500 feet of appellee T.Y., the child's mother, (the "mother") and (2) ordering her to pay the mother's attorney fees and expenses in opposing the motion.    For the reasons that follow, we reverse the juvenile court and vacate the restraining order.

**Factual Background and Procedural History**

{¶2} This case arises out of an application to determine custody that K.A.Y.'s father, A.K. (the "father"), filed in May 2010 in the Cuyahoga County Court of Common Pleas, Juvenile Division, pursuant to R.C. 2151.23(A)(2).    In the spring of 2011, the parents entered into a shared parenting agreement, which was approved by the court.

{¶3} In the years that followed, numerous disputes arose between the parents regarding child support, parenting time and related issues.    In August 2015, the juvenile court terminated shared parenting and entered a new visitation order.    In concluding that a shared parenting arrangement would not work, the juvenile court found:

The relationship between Mother and Father is exceptionally contentious and extremely unhealthy for the minor child. This is due [sic] as a result of Father's unwillingness to communicate with Mother and the uncalled for and mean spirited interference of the paternal grandmother. This is not to say that Mother is without fault. Indeed, there is enough blame to go around.

Both Mother and Father are apparently unable to realize the psychological damage their self-centered and arrogant attitude does to the child. The actions of both Mother and Father (and the paternal grandmother) are hurtful to the child they both claim to love.

THIS NEEDS TO STOP! * * *

{¶4} In June 2016, the father filed a motion to show cause based on the mother's alleged failure to comply with the visitation order. In September 2016, the mother opposed the father's motion and filed her own motion to show cause based on the father's alleged failure to pay child support, failure to comply with the parties' parenting agreement and visitation order and failure to pay attorney fees the court had previously ordered him to pay. In her opposition to the father's motion, the mother asserted that the grandmother was "the problem between mother and father" and that the "toxic relationship" between the mother and the grandmother "has been ongoing since the minor child was born."

{¶5} The hearing on the parents' motions to show cause was originally set for September 30, 2016. The hearing on the motions was continued and the September 30, 2016 hearing was converted into a "pretrial/mediation session." Following the September 30, 2016 pretrial, the juvenile court added the grandmother as a party to the case.[1]

{¶6} On November 23, 2016, the mother filed another motion to show cause and for attorney fees against the father and a motion for a restraining order against the grandmother. In

---

[1] There is nothing in the record to indicate how the grandmother came to be added as a party or why the juvenile court concluded the grandmother should be added as a party to the case at that time. There is no motion in the record seeking to add the grandmother as a party and there is no transcript from the September 30, 2016 pretrial in the record.

her motion for a restraining order, the mother alleged that the grandmother had threatened her, harassed her, "spoken ill" of her to her daughter and "caused nothing but chaos" in their lives. The mother requested that the court enjoin the grandmother "from coming around or being within 500 feet" of the mother. In support of her motion, the mother submitted an affidavit to which she attached copies of several police reports the mother had made in 2010, 2013 and 2015 related to the grandmother and a petition for a civil stalking protection order she purportedly filed in 2015 (which does not appear to have been granted).

{¶7} The hearing on the parents' motions to show cause was rescheduled for December 1 and 2, 2016. The mother was represented by counsel and the father and the grandmother appeared, pro se, at the hearing. Prior to the hearing, the parents reached a settlement agreement with respect to the parenting and transportation issues raised in their motions to show cause such that the mother's request that the father pay a portion of her attorney fees was the only issue that remained between the parents.

{¶8} At the December 1, 2016 hearing, the mother's counsel advised the court that she had filed a motion for a restraining order against the grandmother. No testimony was offered at the December 1, 2016 hearing but the juvenile court indicated that the parties could "talk about" the mother's motion for a restraining order with the court. The juvenile court heard from the mother's counsel, the mother and the grandmother regarding the mother's request for a restraining order against the grandmother. The mother's counsel indicated that a "no-contact order would be the best thing" but, "at a minimum," requested that the juvenile court impose a "temporary restraining order" that "requires that the paternal grandmother cannot come within 500 feet or make any contact with [the mother] by telephone or over the internet, make no disparaging remarks."

**{¶9}** Based on the police reports attached to the mother's motion and the statements made by the mother and the grandmother at the December 1, 2016 hearing, it appears that, over the years, there had been several incidents involving the mother and the grandmother when the grandmother went to the mother's house to pick up or drop off the child for the father. The mother claimed that the grandmother had threatened and harassed her; the grandmother claimed that the mother's allegations were false. The juvenile court judge questioned the grandmother regarding why she continued to go over to the mother's home and expressed his "feel[ing]," based on a prior hearing involving the parties a year earlier, that "a lot of the problems" between the parents were caused by the grandmother. The grandmother disputed this assertion. She indicated that she did not want any contact with the mother but was concerned that if the court issued a restraining order against her, it would "affect [her] job." According to the parties, the mother and the grandmother worked for the same company, but frequently worked from home and did not have regular workplace contact with one another.

**{¶10}** After hearing from the mother, the mother's counsel and the grandmother regarding the issue, the juvenile court judge stated: "Okay. All right. Thanks. I'll put this on, and we'll have to set a hearing." On December 2, 2016, a hearing was held on the mother's request that the father pay a portion of her attorney fees. However, no further hearing was held regarding the mother's motion for a restraining order.

**{¶11}** On December 9, 2016, the juvenile court issued a journal entry incorporating the parties' settlement agreement with respect to their motions to show cause and granting the mother's motion for a restraining order against the grandmother. With respect to the mother's motion for a restraining order, the juvenile court stated:

Paternal Grandmother * * * shall not come within 500 feet of [the mother] or her residence and shall not telephone of text [the mother] and shall not have other persons do same on her behalf.

The failure to abide by this Order may result in the finding of Contempt of Court and a possible sentence of as many as 30 days in the County Jail.

The juvenile court further indicated that the mother's "motion for a no contact order" would be "held in abeyance."

{¶12} On January 4, 2017, the juvenile court issued a nunc pro tunc journal entry correcting the identification of the exhibits to the December 9, 2016 judgment entry and including a judgment entry ordering the father to pay a portion of the mother's attorney fees related to the parents' motions to show cause.

{¶13} On July 20, 2017, the grandmother, then represented by counsel, filed a motion to modify or vacate the restraining order, asserting that the restraining order was procedurally deficient because (1) an evidentiary hearing was never held on the mother's motion for restraining order, (2) the mother's allegations did not meet the requirements for the issuance of a "civil protection order," (3) the restraining order has "no beginning date or end date," (4) the restraining order had "wreaked havoc" in the mother's and grandmother's workplace and (5) the order prevented the grandmother from attending school, church and family functions where the mother might appear. The mother opposed the motion and filed a motion for attorney fees and litigation expenses.

{¶14} On November 1, 2017, the juvenile court held a hearing on the motion. The mother and the grandmother both appeared, were represented by counsel and testified at the hearing.[2] On January 4, 2018, the juvenile court denied the grandmother's motion to modify or

---

[2] The juvenile court's January 22, 2018 journal entry regarding the hearing states that "[t]estimony was taken from the parties." No transcript from this hearing is in the record. Accordingly, it is unknown what testimony or other

vacate the restraining order. The juvenile court did not explain its ruling stating only: "After consideration of all the facts and circumstances the Court finds the Motion to Vacate the Restraining Order not well taken and it is denied." The juvenile court also ordered the grandmother to pay $2,456.70 in attorney fees and litigation expenses, plus statutory interest, incurred by the mother in opposing the grandmother's motion.

{¶15} The grandmother appealed, raising the following four assignments of error for review:

> First Assignment of Error: The trial court did not have jurisdiction to grant the restraining order against third party defendant or hold the no contact order in abeyance.

> Second Assignment of Error: The trial court did not have personal jurisdiction over appellant to issue a restraining order or a no contact order.

> Third Assignment of Error: The trial court restrictions are unrelated to the conduct the court is trying to prevent.

> Fourth Assignment of Error: The trial court did not have authority to grant attorney fees.

**Law and Analysis**

{¶16} As an initial matter, we note that the mother concedes that the juvenile court erred in ordering the grandmother to pay her attorney fees and legal expenses associated with the grandmother's motion to vacate the restraining order. Accordingly, the grandmother's fourth assignment of error is sustained.

{¶17} In her remaining assignments of error, the grandmother challenges the trial court's denial of her motion to vacate the retraining order. She contends she was added as a party "for

evidence was presented at the hearing.

the sole purpose of issuing a restraining order * * * that had no relationship or connection to the custody of the minor child" and that the juvenile court lacked statutory authority to issue the restraining order. She also contends that the juvenile court lacked personal jurisdiction to issue a restraining order against her because service was not perfected and that restraining order was improper because the restrictions set forth in the restraining order were "unreasonable" and there was "no nexus" between the restrictions and "the conduct the court was trying to prevent."

{¶18} "A juvenile court may exercise jurisdiction only if expressly granted the authority to do so by statute." *Rowell v. Smith*, 133 Ohio St.3d 288, 2012-Ohio-4313, 978 N.E.2d 146, ¶ 13, citing Ohio Constitution, Article IV, Section 4(B); R.C. 2301.03(A); *In re Gibson*, 61 Ohio St.3d 168, 172, 573 N.E.2d 1074 (1991). In this case, the father filed his application for custody under R.C. 2151.23(A)(2), which grants juvenile courts exclusive original jurisdiction "to determine the custody of any child not a ward of another court of this state."

{¶19} The juvenile court did not specify the authority pursuant to which it issued the restraining order against the grandmother in this case. The mother asserts that the juvenile court properly entered the restraining order against the grandmother pursuant to Civ.R. 65 "as a result of her conduct which the court determined to be harmful to the minor child."[3] The mother further contends that we should disregard the grandmother's jurisdictional arguments because she

---

[3] The mother initially asserts in her brief that the trial court issued the restraining order as "an ex parte restraining order * * * pursuant to Juv.R. 13." Later on, she asserts that the Rules of Juvenile Procedure do not apply because this is a "proceeding to determine a parent-child relationship" under Juv.R. 1(C)(4) and that the juvenile court properly issued the restraining order against the grandmother pursuant to Civ.R. 65. Juv.R. 1(C)(4) provides that the Rules of Juvenile Procedure "shall not apply to procedure * * * [i]n proceedings to determine parent-child relationships." In *Rowell*, 133 Ohio St.3d 288, 2012-Ohio-4313, 978 N.E.2d 146, at ¶ 1, 25, the court held that "the exception in Juv.R. 1(C) for proceedings to determine parent-child relationships [did] not apply" to a custody case under R.C. 2151.23(A)(2) because it was "not a matter of parentage." Under Juv.R. 13(B)(1), "[p]ending hearing on a complaint, the judge or magistrate may issue temporary orders with respect to the relations and conduct of other persons toward a child who is the subject of the complaint as the child's interest and welfare may require." That is not the situation here.

was "joined as a third-party defendant without objection" and was "noticed on all subsequent proceedings."[4] She also argues that we must presume that the restraining order was "reasonably related to the parenting issues before the court" because the grandmother did not file a transcript of the hearing on her motion to vacate the restraining order or a statement of the proceedings pursuant to App.R. 9(C).

{¶20} There appears to be no dispute that the juvenile court could not have issued the restraining order against the grandmother had she not first been added as a party to the case.

{¶21} Juv.R. 2(Y) defines a "party" to include "a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parent of a child is a child, the parent of that parent, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court."

{¶22} Although the grandmother has not specifically challenged the juvenile court's decision to add her as a party in this case, we note, as an initial matter, that the manner and circumstances under which the juvenile court added the grandmother as a party to this case raises a number of concerns.

{¶23} First, there is no pleading or motion in the record seeking the addition of the grandmother as a party in the case. Second, there is nothing in the record to suggest that the grandmother had notice that anyone had requested that she be added as a party or that the juvenile court was considering adding her as a party to the case. The decision to add the grandmother as a party appears to have been made at the September 30, 2016 "pretrial/mediation session." There is no transcript from that proceeding in the record and, based on the juvenile

---

[4] As detailed below, the mother's claim that the grandmother received notice of "all subsequent proceedings" after she was added as a party is not supported by the record.

court's October 11, 2016 journal entry (which identifies the parties "present in court" that day), it does not appear that the grandmother was present. The juvenile court's October 11, 2016 journal entry does not explain who requested that the grandmother be made a party or why the juvenile court decided it was appropriate to add the grandmother as a party at that time.

{¶24} Third, it does not appear that the grandmother was ever served with a copy of the order adding her as a party. On October 3, 2016, the juvenile court issued a "journal entry continuance" indicating that the hearing on the parents' motions to show cause originally scheduled for September 30, 2016, had been continued until December 1, and 2, 2016 and adding the Department of Child and Family Services as a party to the case. Eight days later, on October 11, 2016, the juvenile court issued a "nunc pro tunc" "journal entry continuance" identical to its October 3, 2016, journal entry except that it added the grandmother as a party to the case instead of the Department of Child and Family Services. Although the docket reflects that the grandmother was served by ordinary mail on October 5, 2016 with a copy of the juvenile court's October 3, 2016 journal entry (purporting to add the Department of Child and Family Services as a party to the case), we see nothing in the record indicating that she was ever served with a copy of the juvenile court's October 11, 2016 "nunc pro tunc" journal entry adding her as a party.

{¶25} The mother asserts that because the grandmother "had the statutory right to seek her own companionship rights," the juvenile court "had jurisdiction to join her as a party and exercise jurisdiction over her with respect to the interests of the child," citing *In re J.L.M.*, 9th Dist. Summit No. 28867, 2018-Ohio-2175. In that case, however, the court granted a grandmother's motion to intervene after she filed a motion to intervene and a motion for visitation with her grandchildren. *J.L.M.* at ¶ 13-18. In this case, the grandmother did not file a

motion to intervene or seek visitation with the child. In this case, there is nothing in the record that specifically indicates why the grandmother was joined as a party in October 2016.

{¶26} There are also issues with the manner in which the restraining order was entered in this case. First, there is no indication that the grandmother was timely and properly served with the mother's motion for a restraining order or given any notice that the motion would be heard on December 1, 2016, along with the parents' motions to show cause. The certificate of service for the mother's motion for restraining order indicates that service was to be made on the grandmother "by certified mail through the Clerk's Office." The mother asserts in her brief, without any citation to the record, that the grandmother "received the Motion for Restraining Order on November 28, 2016." However, we have found nothing in the record to support that assertion.

{¶27} The juvenile court's docket indicates that on November 28, 2016 — three days before the December 1, 2016 hearing — a summons was sent to the grandmother via certified mail.[5] The summons that was directed to the grandmother (which, curiously, is dated November 30, 2016) references three motions filed by the mother's counsel on November 23, 2016 — "OTHER Attorney's Fees," "OTHER For an Order" and "Show Cause Failure to Comply" — and indicates that "[y]ou are hereby commanded to appear for a hearing upon future notice from the court." It did not indicate that the motion for restraining order would be heard on December 1, 2016.

{¶28} Although the grandmother was present at the December 1, 2016 hearing, there is no indication that she was aware that a motion for restraining order against her would be heard that

---

[5] The return of service docket reflects that the certified mail was unclaimed and the summons was resent by ordinary mail in February 2017.

day.[6]  The mother does not dispute this fact and asserts that the restraining order was properly issued as an "ex parte restraining order" pursuant to Civ.R. 65.

{¶29} Aside from reviewing the affidavit the mother attached to her motion for a restraining order, the juvenile court did not take evidence at the December 1, 2016 hearing; the parties and the court simply "talked" on the record about the mother's allegations and request for a restraining order.  Although the juvenile court indicated that a further hearing would be scheduled on the motion, no such hearing was ever scheduled.

{¶30}  The restraining order, by its terms, has no relationship to custody or visitation involving the child.  The restraining order does not mention the child or address any actions by the grandmother with or related to the child; it solely refers to the grandmother's actions with respect to the mother.

{¶31} Further, even if the juvenile court had authority to issue a restraining order against the grandmother under Civ.R. 65, the restraining order issued in this case did not comply with Civ.R. 65.  Civ.R. 65(D) provides, in relevant part: "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained * * *."  Neither the juvenile court's order granting the mother's motion for a restraining order nor the juvenile court's order denying the grandmother's motion to vacate the restraining order, sets forth the reasons the restraining order was issued or retained or is sufficiently specific and detailed as to the terms of the restraining order.  Further, the restraining order contains no time limit.

---

[6] Indeed, it is unclear from the record whether the grandmother was aware at that time that she had been added as a party to the case.

**{¶32}** Although the mother asserts that we should presume that the juvenile court's "findings are correct,"[7] in this case, there is no indication in the record that the juvenile court made any findings with respect to the mother's motion prior to issuing the restraining order. No findings are set forth in the trial court's October 11, 2016 nunc pro tunc journal entry adding the grandmother as a party, its December 9, 2016 journal entry and January 4, 2017 nunc pro tunc journal entry granting the mother's motion for a restraining order or its January 4, 2018 journal entry denying the grandmother's motion to vacate the restraining order.

**{¶33}** Under the particular facts and circumstances of this case, we conclude that the juvenile court lacked authority to impose the restraining order at issue against the grandmother. Accordingly, we reverse the trial court's decision and vacate the restraining order.

**{¶34}** Judgment reversed and vacated.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, A.J., and

---

[7] As noted above, the transcript of the November 1, 2017 hearing on the grandmother's motion to vacate the restraining order was not included in the record on appeal. Ordinarily, where an appellant fails to file a transcript of relevant proceedings, we presume regularity of the trial court's actions and accept its judgment. In this case, however, given the irregularities evident in the record separate and apart from the hearing on the grandmother's motion to vacate the restraining order, we are disinclined to do so.

FRANK D. CELEBREZZE, JR., J., CONCUR