[Cite as *In re A.J.M.*, 2026-Ohio-2176.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

In re:  A.J.M.

---

## OPINION AND JUDGMENT ENTRY
### Case No. 25 CO 0045

---

Civil Appeal from the
Court of Common Pleas, Juvenile Division of
Columbiana County, Ohio
Case No. 2020-0167-2

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Charles A.J. Strader,* Attorney Charles Strader, LLC*,* for Appellant.


Dated:  June 10, 2026

**HANNI, J.**

{¶1} Appellant, paternal grandmother, appeals from a Columbiana County Common Pleas Court, Juvenile Division, decision dismissing her complaint for grandparent visitation. Grandmother argues the trial court abused its discretion in reaching its decision. Because the trial court did not abuse its discretion in finding that it was not in the child's best interest for the court to grant visitation with grandmother, the trial court's judgment is affirmed.

{¶2} The child at issue in this case was born on April 18, 2017. Mother and father have never been married. Since his birth, the child has resided with mother in Salem, Ohio. Father has never sought visitation rights. Mother has allowed father to visit when he wants to. Father resides with grandmother in Youngstown, Ohio. The record is not clear how much time the child has spent with father or grandmother. Mother stopped the child's visits with grandmother approximately two years prior to May 16, 2025, which is when grandmother filed a complaint for grandparent visitation.

{¶3} The matter proceeded to a hearing before a magistrate. At the time, the child was eight years old. Grandmother appeared with counsel. Mother and father each appeared pro se. The magistrate heard testimony from mother, father, and grandmother.

{¶4} The magistrate subsequently denied and dismissed grandmother's complaint on July 25, 2025.

{¶5} On August 8, 2025, Grandmother filed objections to the magistrate's decision. She argued the magistrate abused his discretion in finding that visitation with grandmother would not be in the child's best interest.

{¶6} The trial court considered grandmother's objections. It determined that there was "more than sufficient evidence presented to the Magistrate for the Magistrate to find that granting of companionship to the child's paternal grandmother over the objection of the child's mother is contrary to the best interests of the child[.]" Therefore, the trial court overruled and dismissed grandmother's objections.

{¶7} Grandmother filed a timely notice of appeal on November 21, 2025. She now raises a single assignment of error for our review.

Case No. 25 CO 0045

**{¶8}** Grandmother's assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED PATERNAL GRANDMOTHER'S COMPLAINT FOR VISITATION WITH THE MINOR CHILD.

**{¶9}** In her brief, grandmother recites the testimony, sets out the standard of review, lists the best interest factors and the magistrate's findings as to the factors, and then urges this Court to reverse the trial court's judgment based on the rationale set forth in *In re B.J.A.S.*, 2023-Ohio-4514 (7th Dist.). Grandmother does not elaborate or put forth any other argument.

**{¶10}** In *B.J.A.S.*, the father received custody of the child due to the mother's struggle with addiction. *Id*. at ¶ 2. The father initially allowed the maternal grandfather to visit with the child. *Id*. at ¶ 3. The visits went on for four years. The relationship then deteriorated and visits eventually stopped. After approximately one year, the grandfather filed a motion for visitation. *Id*. at ¶ 11. A magistrate overruled the motion, but after the grandfather's objections, the trial court granted the motion and awarded the grandfather monthly visitation. The father appealed.

**{¶11}** On appeal, the father argued that as a "fit parent" his wishes overrode the child's best interest. *Id.* at ¶ 27. We noted, however, that "while in Ohio the wishes of the parent are to be accorded 'at least some special weight,'" a parent's wishes should not be placed before a child's best interest. *Id*., citing *Harrold v. Collier*, 2005-Ohio-5334, ¶ 44. We pointed out that "the Ohio Supreme Court reiterated that a parent's wishes should not be placed before a child's best interests and clarified that the presumption that a fit parent is acting in the best interest of the child is rebuttable on a showing that visitation is in the best interest of the child." *Id*. at ¶ 28, citing *Rowell v. Smith*, 2012-Ohio-4313, ¶ 21.

**{¶12}** We went on to find that the father's assertions were also not supported by the record, noting the child and the grandfather had an extremely positive relationship prior to the father ceasing visits. *Id.* at ¶ 29. Additionally, we noted that the trial court appeared to find the father's testimony regarding problems he perceived to be fabricated. *Id*. at ¶ 31. Thus, we concluded that the trial court acted within its discretion in deciding

that continuing visitation with the grandfather was in the best interest of the child, based on the facts presented. *Id*.

**{¶13}** In speaking on the issue of grandparent visitation, the Ohio Supreme Court has observed that "grandparents have no inherent visitation rights with grandchildren or a constitutional right of association with them. Indeed, grandparents do not have any legal right to have contact with their grandchildren until a court grants them such a right." *In re Whitaker*, 36 Ohio St.3d 213, 215 (1988). The Court acknowledged, however, that grandparents *may* be granted visitation rights if the trial court finds that such visitation is in the child's best interest. *Id*. at 217.

**{¶14}** "If a child is born to an unmarried woman and if the father of the child has acknowledged the child . . . the parents of the father . . . may file a complaint requesting that the court grant them reasonable companionship or visitation rights with the child." R.C. 3109.12(A). The court may grant visitation if it determines that the granting of visitation is in the best interest of the child. R.C. 3109.12(B).

**{¶15}** Pursuant to R.C. 3109.051(D):

(D) In determining whether to grant parenting time to a parent pursuant to this section or section 3109.12 of the Revised Code or companionship or visitation rights to a grandparent, relative, or other person pursuant to this section or section 3109.11 . . . the court shall consider all of the following factors:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;

(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

. . .

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child . . .

. . .

Case No. 25 CO 0045

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

**{¶16}** In reviewing a trial court's decision on a motion for grandparent visitation and the court's analysis of the best interest factors, we apply an abuse of discretion standard of review. *In re F.D.*, 2009-Ohio-4788, ¶ 10 (2d Dist.). Abuse of discretion implies the trial court's judgment was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶17}** The magistrate made findings going to many of these best interest factors as follows.

**{¶18}** As to the first factor, the child and grandmother have had no substantial contact for the past two years. Mother and grandmother do not have a good relationship. Father has not seen the child in the last six months. And father has not had the child overnight for approximately one-and-a-half to two years.

**{¶19}** As to the second factor, grandmother lives in Youngstown, Ohio and mother lives in Salem, Ohio.

**{¶20}** As to the third factor, the child lives with mother and his two sisters.

**{¶21}** As to the fourth factor, the child is eight years old.

**{¶22}** As to the fifth factor, grandmother resides with father in an apartment on Hillman Street in Youngstown. The child has a well-established routine with mother.

**{¶23}** As to the seventh factor, mother is concerned for the child's safety if visitation was ordered with grandmother. Grandmother does not have a driver's license. Grandmother has a friend named Patrick, whom mother and father both agree should not be permitted around the child.

**{¶24}** As to the ninth factor, grandmother has many health issues and must use oxygen at all times.

**{¶25}** As to the tenth factor, grandmother is willing to be flexible and accommodate mother's and the child's schedules.

**{¶26}** As to the fifteenth factor, mother does not want grandmother to have visitation with the child. Father wants grandmother to have visitation with the child but

only if the child is protected from contact with grandmother's friend Patrick.

**{¶27}** As to the sixteenth factor, grandmother wishes that the court award her one weekend per month of visitation with the child.

**{¶28}** The magistrate did not make any findings going to factors 6, 8, 11, 12, 13, and 14, finding there was no evidence presented as to these factors.

**{¶29}** The evidence supports the findings. Mother, father, and grandmother all testified at the hearing. Mother and father each appeared pro se. Grandmother was represented by counsel.

**{¶30}** Mother testified that she resides in Salem with her three children, one being the child at issue, and her fiancé. (Tr. 4). Mother said the child was eight years old. (Tr. 10). She acknowledged that the child had spent time with grandmother in the past a "couple times a month" but mother was generally present. (Tr. 5). Mother stated she was opposed to court-ordered visitation with grandmother. (Tr. 6). She said that on one occasion when the child was left with grandmother and father, the child was mostly in the care of an aunt. (Tr. 6). Mother testified that on another occasion she allowed the child to stay with grandmother and father for the weekend. (Tr. 6). When mother walked in to pick the child up, she found grandmother asleep in her bed, father was nowhere to be found, and the aunt was in her room on her phone. (Tr. 6).

**{¶31}** Mother opined that the child was not safe with grandmother. (Tr. 6-7). She pointed out that grandmother had "wrecked her car" while texting and driving. (Tr. 7). She expressed concern that at the apartment complex where grandmother lived, there had been a shooting and drug activity. (Tr. 8). She opined it was in the child's best interest not to visit with grandmother. (Tr. 10).

**{¶32}** Mother stated the child has not stayed with grandmother for approximately two years when grandmother moved into her current apartment. (Tr. 9). When she was allowing the child to go to grandmother's residence, it was because the child was visiting father and he lives with grandmother. (Tr. 10). Mother noted that father does not have a visitation order. (Tr. 11). She stated that she allows the child to visit with father whenever father requests to visit. (Tr. 11). Mother noted it had been at least six months since father had visited with the child. (Tr. 11).

Case No. 25 CO 0045

{¶33} Mother further expressed her concern with the child's safety if left alone in grandmother's care. Mother stated that while in grandmother's care, another child in the family overdosed after "getting into" grandmother's medication. (Tr. 34). She noted that while she was at grandmother's house visiting several years prior, a child was able to get ahold of grandmother's medication because she did not put the medication away. (Tr. 35-36). And she testified that grandmother had her driver's license taken away, yet she still drives. (Tr. 36). Additionally, mother stated that the child suffered from bed bug bites after visiting with grandmother and she found a bed bug in clothing that grandmother had given him. (Tr. 35-36).

{¶34} Father testified that he resides with grandmother in Youngstown. (Tr. 14). Father said he last saw the child six months ago. (Tr. 19). He stated the last time he had the child for a weekend visit was approximately one-and-a-half to two years ago. (Tr. 15). He stated that when he has observed the child with grandmother the child has cuddled with her "when he feels up to it" and they watch television. (Tr. 16).

{¶35} When asked if he had any objection to court-ordered visitation with grandmother, father replied "[s]omewhat." (Tr. 16). He explained that grandmother has a friend named Patrick who caused father some concerns due to his cocaine use. (Tr. 16-17). Father stated that if grandmother were alone with the child, without Patrick, he would not have any concerns. (Tr. 16). Father then opined it was in the child's best interest to have some visitation with grandmother. (Tr. 17).

{¶36} Grandmother testified that she moved to her current apartment on Hillman Street in Youngstown approximately two years ago. (Tr. 22). She stated she has not seen the child in over a year. (Tr. 22). Grandmother said that when the child used to visit with her they would spend their time playing with his toys or watching television. (Tr. 24). She stated she was asking the court for a visitation order because mother would not let her visit with him. (Tr. 24). Grandmother asked the court to grant her one weekend a month with the child. (Tr. 25).

{¶37} Grandmother stated that the shooting mother referenced occurred right after she moved in and did not occur in her apartment unit. (Tr. 25). She stated there is no drug use in her particular apartment except for her medications. (Tr. 26). Grandmother said she is "on all kinds of medications" and is on oxygen. (Tr. 26). She

stated that if granted visitation, she would maintain the child's regular schedule. (Tr. 27). She also stated that she will keep the child away from Patrick if he was visiting. (Tr. 31).

{¶38} This evidence supports the magistrate's findings. Mother's testimony indicated she was concerned for the child's safety if the court were to award visitation with grandmother. Mother based her concerns on grandmother's medications, her driving without a driver's license, her causing an accident while texting and driving, her leaving the child unattended, the crime at her apartment complex, and a possible bed bug situation. Additionally, father expressed concerns regarding the child being exposed to a friend of grandmother's. Given this testimony, the trial court did not abuse its discretion in finding a visitation order with grandmother was not in the child's best interest.

{¶39} In *Harrold*, 2005-Ohio-5334, at ¶ 12, the Ohio Supreme Court held that when considering grandparent visitation, "Ohio courts are obligated to afford some special weight to the wishes of parents of minor children when considering petitions for nonparental visitation made pursuant to R.C. 3109.11 or 3109.12." Moreover, as observed by the dissent in *B.J.A.S.*, 2023-Ohio-4514, at ¶ 51 (7th Dist.), in an instance where "Mother and Maternal Grandfather are not estranged . . . the public policy supporting grandparent visitation – where a parent deprives an estranged relative of a continued relationship with the child – is not served[.]" This rationale can be said to apply here. Father and grandmother are not estranged. Father lives with grandmother. There is no indication that he has requested a visitation order. There is also no indication that mother has denied father visitation.

{¶40} Accordingly, grandmother's sole assignment of error is without merit and is overruled.

{¶41} For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P.J., concurs.

Dickey, J., concurs.

Case No. 25 CO 0045

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division, of Columbiana County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**